THOMPSON, Presiding Judge.
 

 VFJ Ventures, Inc. (“VFJ”), f/k/a VF Jeanswear, Inc., filed an appeal in the Montgomery Circuit Court (“the trial court”) pursuant to § 40-2A-7(b)(5)b., Ala. Code 1975, challenging a decision of the Alabama Department of Revenue assessing against VFJ an amount representing additional corporate income tax purportedly owed the State; it also named the commissioner of the Department as a defendant.
 
 [1]
 
 We refer to the two named defendants collectively as “the Department.”
 

 The Department responded, arguing that the assessment should be upheld. The Department later filed a motion for a partial summary judgment, which the trial court denied. The trial court conducted a lengthy trial at which evidence was presented ore tenus and numerous exhibits submitted. The trial court also accepted posttrial briefs from the parties. On January 24, 2007, the trial court entered a judgment in favor of VFJ. The Department timely appealed to this court pursuant to § 12-3-10, Ala.Code 1975.
 

 VFJ manufactures and sells jean-swear sold under the Lee® and Wrangler® brand names in the United States. VFJ has two distribution facilities and a “cutting” facility in Alabama. Those facilities employ approximately 600 people. In 2001, the tax year at issue in this case, VFJ’s gross sales were approximately $2.1 billion; only a portion of VFJ’s gross sales were attributable to its activities in Alabama. “Under both the Due Process and the Commerce Clauses of the [United States] Constitution, a state may not, when
 
 *956
 
 imposing an income-based tax, ‘tax value earned outside its borders.’ ”
 
 Container Corp. of America v. Franchise Tax Bd.,
 
 463 U.S. 159, 164, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983) (quoting
 
 ASARCO, Inc. v. Idaho State Tax Comm’n,
 
 458 U.S. 307, 315, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982)). Thus, only that part of VFJ’s income that was fairly attributable to its presence in Alabama is subject to taxation in this state.
 

 When a corporation such as VFJ has manufacturing facilities or operating facilities or performs activities in more than one state, a formula known as an “apportionment factor” is used to determine how much income is attributable to each state. The apportionment factor is used to determine the portion of the corporation’s income that is subject to income tax in each of the states in which the corporation has activity.
 
 See Allied-Signal, Inc. v. Director, Div. of Taxation,
 
 504 U.S. 768, 778, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992) (“Because of the complications and uncertainties in allocating the income of multi-state businesses to the several States, we permit States to tax a corporation on an apportionable share of the multistate business carried on in part in the taxing State.”). In this case, the Department and VFJ seem to have agreed on the application of a common three-part apportionment factor that has been approved by the United States Supreme Court.
 
 See Container Corp. of America v. Franchise Tax Bd.,
 
 463 U.S. at 170, 103 S.Ct. 2933 (“[N]ot only has the three-factor formula met our approval, but it has become ... something of a benchmark against which other apportionment formulas are judged.”).
 

 Alabama, like a number of other states, has adopted the apportionment factor referenced in
 
 Container Corp. of America v. Franchise Tax Bd.,
 
 supra, for determining the portion of a multistate corporation’s income that may be taxed in this state. The apportionment factor is set forth in § 40-27-1, Art. IV, ¶9, Ala.Code 1975, as a part of Alabama’s adoption of the Multi-state Tax Compact. The Multistate Tax Compact creates a uniform system for taxing entities such as VFJ, who have operations or are active in more than one state.
 
 State Dep’t of Revenue v. MGH Mgmt., Inc.,
 
 627 So.2d 408, 408-09 (Ala.Civ.App. 1993) (“The [Multistate] Tax Compact provides for the allocation and apportionment of income of taxpayers doing business in more than one state in such a manner as to avoid duplicative taxation.”).
 

 In opening statements during the trial of this matter, one of the attorneys accurately summarized Alabama’s apportionment factor for the trial court as follows:
 

 “You take the ratio of the property in the state to the property out of state, a ratio of the sales in the state to the sales out of the state, a ratio of the payroll in the state to the sales [sic] out of the state, add them together and divide by three, and that average is your apportionment factor.”
 

 For the 2001 tax year, VFJ’s apportionment factor for Alabama was 13.9299%. Using that factor, VFJ reported approximately $13,702,000 in income to be apportioned to Alabama on its state corporate income-tax return for the 2001 tax year.
 

 VFJ is a subsidiary of VF Corporation (“VF”), a parent holding company comprising hundreds of subsidiaries worldwide. VF’s corporate headquarters is located in Greensboro, North Carolina. Among VF’s subsidiaries are numerous intangible management companies (“IMCOs”) that own and manage trademarks, most of which are used by other VF subsidiaries. All the IMCOs are Delaware corporations.
 

 A treatise on state taxation has explained the function of IMCOs like those in the VF corporate family as follows:
 

 “One of the standard tax-planning devices corporations employ to reduce tax
 
 *957
 
 able income in states where they conduct their operations is to transfer their trademarks or trade names to an intangibles holding company ([IMCO]) and license back the trademarks or trade names for a royalty. The royalty, which is deductible to the operating company, reduces its income in the states where it carries on its business. The [IMCO], on the other hand, ordinarily pays no tax on its royalty income because it is taxable— or at least taxpayers so contend — only in a state that does not tax such income (e.g., Delaware).”
 

 J. Hellerstein & W. Hellerstein,
 
 State Taxation
 
 ¶ 9.20[3]£j] (2007 Cum.Supp.).
 

 Two of the IMCOs in the VF corporate family are the H.D. Lee Company, Inc. (“Lee”), and the Wrangler Clothing Corporation (“Wrangler”), which own and manage trademarks for Lee® and Wrangler® brands, respectively. Lee and Wrangler license their respective trademarks to VFJ and other VF subsidiaries, as well as to third parties. It is undisputed that VFJ and the other subsidiaries of VF, including Lee and Wrangler, are “related members” as that term is defined for the purpose of determining Alabama’s corporate income tax.
 
 [2]
 
 Testimony at trial indicated that Lee and Wrangler generally charge a 5% royalty rate to both related-member and third-party licensees. In 2001, the tax year at issue, approximately 78% of Lee’s income came from licensing agreements with related members. For that same year, approximately 97% of Wrangler’s licensing income was derived from licensing agreements with related members.
 

 In Delaware, IMCOs such as Lee and Wrangler are subject to taxation only under limited circumstances.
 
 See
 
 Del.Code Ann. tit. 30, § 1902. Because the royalty payments are generally deductible expenses as to the licensee operating companies, the royalty payments made by related-member licensees that comprise the corporate income of the IMCOs escape taxation on the state level. Accordingly, the creation of the Delaware IMCOs created significant state-tax savings for VFJ and other subsidiaries of VF by effectively shifting income out of states that do impose corporate income tax to a state that does not impose such a tax.
 

 To illustrate this process, the record indicates that in 2001 VFJ paid Lee $36,220,000 in licensing royalty fees for its use of the Lee® trademarks on its products, and it paid Wrangler $66,420,000 for the use of its Wrangler® trademarks. On its 2001 federal income-tax return, VFJ deducted those royalty payments as ordinary and necessary business expenses,
 
 see
 
 26 U.S.C. § 162, thereby reducing the amount of its federal taxable income. Because federal taxable income is the starting point for the calculation of taxable income in Alabama,
 
 see
 
 § 40-18-33, Ala. Code 1975, the deduction of those royalty payments as business expenses also served to reduce VFJ’s taxable income in Alabama. Thus, the royalty payments VFJ made to Lee and Wrangler for the use of their trademarks in its operating facilities in Alabama and other states worked to transfer funds out of this state, which has a corporate income tax, to the Delaware IMCOs, thereby ensuring that those royalty payments could not be subjected to taxation on the state level. In the 2000 tax year, the use of the practice of making royalty payments to the related-member
 
 *958
 
 IMCOs resulted in a total state-tax savings for VFJ (for its total operations, not just those in Alabama) of approximately $5.5 million. VFJ’s 2001 state-tax savings as a result of royalty payments to the related-member IMCOs was approximately $6 million.
 

 The payment of royalty fees to a related member located in a jurisdiction that does not impose a state corporate income tax works to avoid state taxation only in states known as “separate-entity” or “separate-reporting” states. In those states, including Alabama, each entity in a corporate group that has activity in the state must file a separate corporate income-tax return in the state. The basis of taxation is the amount of income earned within the state by the individual corporate entity. In a separate-reporting state, “each part of an affiliated group of corporations is treated as a separate entity” for the purpose of determining the amount of taxable income to be apportioned to that state.
 
 E.g., Bridges v. Autozone Props., Inc.,
 
 900 So.2d 784, 792 (La.2005). Other states allow a practice known as “combined reporting,” pursuant to which a taxing state treats a group of commonly owned companies, such as VF and its subsidiaries, as a single taxpayer. In a combined-reporting state, the incomes of the various members of the group are combined and a formula is applied to determine what portion of the entire group’s income is attributable to, and therefore taxable in, that state.
 
 See Citizens Utils. Co. of Illinois v. Department of Revenue,
 
 111 Ill.2d 32, 40, 488 N.E.2d 984, 987, 94 Ill.Dec. 737, 740 (1986) (containing a thorough discussion of the difference in the methods of taxation of combined-reporting states and separate-entity states). In combined-reporting states, transactions between related members do not work to shift income because all income from the various members of the corporate group (including IMCOs) is included in the determination of taxable income for that state.
 

 The difference between combined-reporting states and separate-entity states has been aptly illustrated as follows:
 

 “Intercompany arrangements of this type [IMCOs] do not reduce state income taxes in ‘combined reporting’ states, that is, states which require an affiliated group of corporations engaged in a common enterprise (a ‘unitary business’), part of which is conducted in the state, to file a combined income tax return. In those states, the [IMCO] ordinarily must be included in the combined return, and the intercompany transactions are eliminated....
 

 “In ‘separate reporting’ states, that is, states in which each corporation [even within a corporate family] files a separate income tax return, a number of state tax administrators have attempted to tax the income of out-of-state [IM-COs] that were not physically present in the state but earned income from licensing intangible assets to related corporations that conducted business in the state.”
 

 James A. Amdur,
 
 State Income Tax Treatment of Intangible Holding Companies,
 
 11 A.L.R. 6th 543, 553 (2006).
 

 As indicated earlier, Alabama is a separate-reporting state. Alabama requires certain adjustments to the federal taxable-income amount in order to determine the amount of state taxable income. § 40-18-33, Ala.Code 1975. The Alabama Legislature created one such adjustment when it enacted Act No. 2001-1088, Ala. Acts 2001, which amended § 40-18-35, Ala.Code 1975, to add subsection (b). Subsection (b) of § 40-18-35 is now referred to as Alabama’s “add-back” statute.
 
 [3]
 

 
 *959
 
 Alabama’s add-back statute restricts the deductibility of certain intangible and interest expenses for the purpose of calculating state taxable income. Although Alabama’s add-back statute was enacted in December 2001, the Alabama Legislature specified that the statute was effective “for all tax years beginning subsequent to December 31, 2000.”
 
 See
 
 Act No. 2001-1088, § 10. Therefore, the add-back statute applied to the 2001 tax year.
 

 Alabama’s add-back statute provides, in relevant part:
 

 “(b) Restrictions on the deductibility of certain intangible expenses and interest expenses with a related member.
 

 “(1) For purposes of computing its taxable income, a corporation shall add back otherwise deductible interest expenses and costs and intangible expenses and costs directly or indirectly paid, accrued, or incurred to, or in connection directly or indirectly with one or more direct or indirect transactions, with one or more related members, except to the extent the corporation shows, upon request by the commissioner, that the corresponding item of income was in the same taxable year: a. Subject to a tax based on or measured by the related member’s net income in Alabama or any other state of the United States, or b. subject to a tax based on or measured by the related member’s net income by a foreign nation which has in force an income tax treaty with the United States, if the recipient was a ‘resident’ (as defined in the income tax treaty) of the foreign nation. For purposes of this section, ‘subject to a tax based on or measured by the related member’s net income’ means that the receipt of the payment by the recipient related member is reported and included in income for purposes of a tax on net income, and not offset or eliminated in a combined or consolidated return which includes the pay- or.
 

 “(2) The corporation shall make the adjustments required in subdivision (1) unless the corporation establishes that the adjustments are unreasonable, or the corporation and the Commissioner of Revenue agree in writing to the application or use of alternative adjustments and computations. Nothing in this section shall be construed to limit or negate the commissioner’s authority to otherwise enter into agreements and compromises otherwise allowed by law.
 

 “(8) The adjustments required in subdivision (1) shall not apply to that portion of interest expenses and costs and intangible expenses and costs if the corporation can establish that the transaction giving rise to the interest expenses and costs or the intangible expenses and costs between the corporation and the related member did not have as a principal purpose the avoidance of any Alabama tax and the related member is not primarily engaged in the acquisition, use, licens
 
 *960
 
 ing, maintenance, management, ownership, sale, exchange, or any other disposition of intangible property, or in the financing of related entities. If the transaction giving rise to the interest expenses and costs or intangible expenses and costs, as the case may be, has a substantial business purpose and economic substance and contains terms and conditions comparable to a similar arm’s length transaction between unrelated parties, the transaction will be presumed to not have as its principal purpose tax avoidance, subject to rebuttal by the Commissioner of the Department of Revenue.”
 

 § 40-18-35(b).
 

 Thus, Alabama’s add-back statute requires that a corporation add back into its taxable income expenses and costs related to intangibles such as trademarks that are paid to a related member. In this case, the Department contends that, subject to § 40-18-35(b), the royalty payments VFJ made to Lee and Wrangler during the 2001 tax year must be added to VFJ’s federal taxable income for the purpose of calculating VFJ’s taxable income in Alabama.
 

 It is undisputed that the royalty payments VFJ made to Lee and Wrangler in 2001 for the use of the IMCOs’ trademarks were the type of intangible expenses referenced in Alabama’s add-back statute. VFJ deducted those royalty payments from its federal taxable income, and, therefore, those deductions flowed through to the starting point of corporate net income subject to taxation in Alabama. Accordingly, unless one of the three exceptions set forth in § 40 — IS—35(b)(1), (2), or (3), applies, Alabama’s add-back statute requires that those deductions for intangible expenses paid to the related IMCOs be added back into the calculation of VFJ’s taxable income for Alabama.
 

 In calculating and paying its Alabama corporate income tax for the 2001 tax year, VFJ did not add back into the calculation of its taxable income the intangible expenses required to be added by Alabama’s add-back statute. The Department conducted an audit of VFJ’s corporate tax return for the 2001 tax year. Thereafter, the Department issued a notice of final assessment to VFJ, demanding payment of an additional $1,019,899 in state taxes. The vast majority of that assessment was attributable to the Department’s inclusion, based on the add-back statute, in the Department’s determination of VFJ’s taxable income of the royalty payments VFJ made to Lee and Wrangler for the use of the trademarks of those IMCOs. VFJ has challenged only the portion of the assessment attributable to the add-back statute.
 

 In the trial court, VFJ challenged that part of the Department’s assessment that was based on the application of the add-back statute. VFJ argued that the add-back statute should not apply, based on certain exceptions contained in the statute. Specifically, VFJ maintained that the royalty payments had been subject to taxation in another jurisdiction,
 
 see
 
 § 40-18-35(b)(1), and that the application of the add-back statute was unreasonable because the royalty payments to Lee and Wrangler had a legitimate business purpose and economic substance,
 
 see
 
 § 40-18-35(b)(2). VFJ also challenged the constitutionality of Alabama’s add-back statute. The Department responded and insisted that the assessment was valid. Later, in its motion for a partial summary judgment, the Department argued that VFJ’s argument regarding the business purpose and economic substance of the IMCOs was not relevant to a determination of unreasonableness under § 40-18-35(b)(2).
 

 The trial court received ore tenus evidence and heard the arguments of the
 
 *961
 
 parties during a four-day trial. In addition, each party submitted numerous exhibits. Much of the evidence pertained to VFJ’s attempt to demonstrate that the Lee and Wrangler IMCOs had legitimate business purposes and economic substance, and, therefore, according to VFJ’s argument, application of the add-back statute would be unreasonable. Some of the evidence presented at the trial was summarized by the trial court in its judgment as follows:
 

 “At trial, VFJ established several other purposes [other than the avoidance of state taxation] for segregating the ownership and management of [VF’s] trademarks into the IMCOs. Centralization of trademarks increased efficiency by concentrating management in one group of employees instead of being spread throughout the various operating subsidiaries around the world. Centralization also allowed the employees to develop the expertise necessary to maintain the necessary registrations and monitor and combat infringement worldwide. The centralization and specialization also reduced duplicative efforts, costs, and reliance on outside counsel, increasing efficiency. VF was able to save at least $60,000 per month in fees paid to outside counsel when it began its centralized trademark management.
 

 “Centralization of trademark management allowed third party licensing efforts to be coordinated and managed. It also allowed easier monitoring of expenses and revenues associated with the intangible assets. Furthermore, centralization of intangible property was also part of a larger effort by [VF] in the 1990s to begin sharing common services (such as data processing, information technology, payroll, treasury, employee benefits and legal services) to capitalize on economies of scale.
 

 “The parties vigorously disputed at trial whether segregation of the different families of trademarks into different IMCOs facilitated the ease of sale of VF companies or lines of business. I find that the evidence established that in VF’s history of both selling and purchasing several lines of business, such sales were facilitated by having the intangibles owned by an IMCO, thereby avoiding the need to transfer and assign each trademark, which could require thousands of assignments and filings around the world. VF in fact sold two IMCOs, Healthtex Apparel Corp., and Jantzen Apparel Corp., to third party purchasers in recent years and found that the IMCO structure facilitated the transfer of the intangibles.
 

 “Segregating the intangible assets into separate management companies provided a more flexible business structure in other ways as well. For example, this structure would give the affiliated group more options in the case of a hostile takeover. It also became easier for the affiliated group to borrow money when it could demonstrate that the IM-COs had valuable assets as potential collateral and steady streams of income, without potential for unforeseen liabilities. The use of several different IM-COs ensured clean title to the different families of trademarks, and segregated the liabilities of the operating companies from the very valuable intangible assets. It also made it easier to track the profitability of the different families of trademarks.
 

 “There were also several advantages to incorporating the IMCOs in Delaware. Delaware has advanced and favorable corporate law, and the U.S. District Court of Delaware has developed a specialty in intellectual property law. Delaware has an experienced workforce with experienced service providers in the intellectual property area.
 

 
 *962
 
 “[VFJ] did an excellent job during the course of this trial convincing the Court that Lee and Wrangler are not merely ‘shell’ corporations, but carry on substantial activities. The Court had the benefit of watching a videotape which set out the entire operation in Delaware. They had 3,200 square feet of office space in Wilmington, Delaware. Lee currently has at least fifteen employees, including two trademark attorneys, six trademark paralegals, one licensing paralegal, three trademark assistants, controller, staff accountant, and receptionist. These employees perform work for Wrangler as well. There was no question that this is a ‘working office,’ not just an empty space with a post office box.
 

 “The [IMCO] employees monitor and maintain thousands of trademark registrations throughout the world. They license trademarks to VF affiliates like VFJ and also to numerous third parties. In 2001, approximately 22% of Lee’s royalty income and 3.2% of Wrangler’s royalty income were derived from third parties. Helen Winslow, assistant general counsel of Lee, reviews license applications from third parties and has the authority to turn down a license application from a potential licensee whose products might tarnish a brand’s image or raise liability issues. Ms. Winslow can and often does require a test period for a new licensee or grant a license only in a certain geographic territory. Ms. Winslow engages in negotiations with the licensee, licensee’s counsel, and usually a representative from a VF manufacturing company in order to set the terms of the license. Ms. Winslow, a past president of the Delaware State Bar Association, does not merely rubber stamp any paper brought to Lee by a related company.
 

 “The IMCOs generally charged the same arm’s-length rates for intercompa-ny license agreements as third-party license agreements. The general rule was a flat 5% license or royalty fee, as determined by industry standards.
 

 “... The IMCOs then negotiated with potential licensees in order to ensure the quality standards were sufficiently high that the licensees’ use of the trademarks would not harm their value. If the standards were acceptable, the IMCO adopted those quality standards for the license; if the potential licensee would not agree to sufficiently high quality standards, no license was granted.
 

 “In order to ensure compliance with the standards, the IMCOs entered into ‘Technical Assistance and Know-How Agreements’ with related VF manufacturing companies. In these agreements, the manufacturing entity agreed to provide certain technical assistance to the entities to which the IMCOs licensed particular trademarks. The assistance included provision of technical know-how and expertise with respect to the design, manufacture, quality control, promotion, marketing and distribution of the branded products. In exchange, the IMCOs reimbursed the manufacturing company for all costs associated with such consulting plus 5%.
 

 “The IMCOs monitored all licenses, both VF and third-party, for proper trademark usage. In addition, the IM-COs hired third parties to investigate licensees’ factories and ensured that the affiliated group’s centralized audit group also investigated factories for quality control. The inspection program also ensured proper quality control over the goods manufactured by [the] licensees.
 

 “Lee and Wrangler also engaged in monitoring for potential trademark infringements. The IMCO staff received and reviewed ‘watch service’ reports daily to monitor for trademark applications claiming rights in trademarks that re
 
 *963
 
 sembled Lee’s or Wrangler’s trademarks. They also reviewed weekly the Official Gazette, a publication of the U.S. Patent and Trademark Office that lists all approved trademark applications. If an IMCO discovered a potential infringement, it took steps to protect its trademarks, including filing court proceedings against the potential infringers if necessary.
 

 “VFJ entered into license agreements with Lee and Wrangler that governed the licensing arrangement; these agreements contained terms comparable to those in the IMCOs’ agreements with third parties. There is no dispute that the
 
 5%
 
 royalty rate was an arm’s length rate. Pursuant to these license agreements, VFJ paid royalties in cash to Lee and Wrangler for the use of their trademarks based on the amount of VFJ’s sales. VFJ transferred cash to Lee and Wrangler when making royalty payments.”
 

 In addition to the foregoing, VFJ presented the testimony of Professor Richard Pomp, an expert witness in the area of state and local taxation, who testified that there are no add-back statutes of which he approves. He characterized Alabama’s add-back statute as “overbroad [and] overreaching.” Pomp testified that royalties on intangibles are business expenses that should be deducted in determining taxable income regardless of whether the royalty payments are made to a related-member company. In Pomp’s opinion, the appropriate inquiry in determining whether the application of an add-back statute is unreasonable is whether the deduction is truly one for a legitimate or ordinary and necessary business expense.
 

 According to Pomp, the determination of whether it is unreasonable to require a corporation to comply with the add-back statute should focus on whether there is a legitimate business purpose or economic substance to the royalty-payment transactions. On cross-examination, Pomp acknowledged that states have other methods of preventing those deductions that lack a legitimate business purpose or economic substance, also known as “sham” deductions. Therefore, Pomp also conceded that add-back statutes are not limited to the prevention of sham deductions.
 

 The Department presented the testimony of witnesses who spoke in support of the add-back statute. Dr. Alan Shapiro, a professor of finance at the University of Southern California, testified that add-back statutes attempt to “cure some of the distortions” that arise in separate-reporting states because of transactions between related corporations. Dr. Shapiro explained that Alabama operating companies add value to their products through the use of intangibles for which royalties are paid and that the add-back statute is an attempt to allocate some of that value or income to Alabama.
 

 Peter Enrich, a law professor from Northeastern University who specializes in state and local taxation, testified that add-back statutes are not designed to address the issue of sham deductions. Enrich stated that he believed that unreasonableness exceptions to add-back statutes, such as the one in § 40-18-35(b)(2), are designed to avoid situations in which the resultant tax on the corporation would be out of proportion to the corporation’s activity in the taxing state.
 

 Joe Garrett, the Department’s administrator of tax policy, testified that in August 2008 the Department adopted a regulation (“the add-back regulation”) that interprets the provisions of the add-back statute.
 
 See
 
 Rule 810-3-35-.02, Ala. Admin. Code (Department of Revenue). In essence, that regulation, in part, interprets the unreasonableness exception to apply when there is “no fair relation” to the corporate taxpayer’s activities in Alabama. It is un
 
 *964
 
 disputed, however, that the add-back regulation does not apply to this case because it was adopted by the Department after this dispute arose.
 

 Garrett’s testimony indicated that on numerous occasions during the 14-month interim between the December 2001 enactment of the add-back statute and the August 2003 adoption of the add-back regulation, the Department had granted exceptions pursuant to § 40 — 18—35(b)(2). Garrett explained that the Department had granted exceptions both on the basis of the unreasonableness exception to the add-back statute and as an alternative adjustment by the commissioner.
 
 See
 
 § 40-18-35(b)(2). Garrett testified that a large number of taxpayers had sought to avoid the add-back statute by asserting that the unreasonableness exception set forth in subsection (b)(2) applied to the transactions at issue because of business purpose or economic substance and that the Department has denied those requests.
 

 According to Garrett, the Department has applied the unreasonableness exception to those situations in which a corporation’s tax as a result of the application of the add-back statute would be “out of proportion with what could reasonably be said to be attributed to the State.” Garrett stated that the add-back regulation was formulated in response to questions concerning the interpretation of the add-back statute. Garrett testified that the provisions of the add-back regulation pertaining to the unreasonableness exception were consistent with the interpretation the Department had followed from the date the add-back statute was enacted. Garrett also stated that the adoption of the add-back regulation had not resulted in a change in the manner in which the Department had interpreted or applied the unreasonableness exception to the add-back statute.
 
 [4]
 

 VFJ also presented expert testimony to support its claim that the subsection (b)(1) exception, known as the “subject-to-tax exception,” of the add-back statute exempted it from the statute’s application. That evidence is set forth in the section of this opinion addressing VFJ’s claim with regard to the subject-to-tax exception.
 

 Judgment
 

 In its judgment, the trial court concluded that the unreasonableness exception to the add-back statute contained at § 40-18-35(b)(2) applied, and, therefore, it reversed the Department’s assessment. In concluding that the add-back statute did not apply because the unreasonableness exception disposed of the case, the trial court found it unnecessary to resolve VFJ’s claim regarding the subject-to-tax exception found in § 40-18-35(b)(l) and VFJ’s constitutional challenges to the add-back statute.
 
 [5]
 
 The Department timely appealed.
 

 
 *965
 
 As an initial matter, this court must resolve a conflict in the manner in which the parties interpret the trial court’s judgment. In making its arguments to this court, the Department asserts that the trial court’s judgment was based on a finding that the application of the add-back statute would be unreasonable because the royalty payments to the IMCOs had a business purpose and an economic substance. In contrast, VFJ contends that the trial court based its judgment on a determination that the application of the add-back statute would result in a distortion of VFJ’s income attributable to Alabama.
 

 In reaching its legal conclusions, the trial court stated, in pertinent part:
 

 “Because add-back in VFJ’s circumstances effectively denies it a deduction for a necessary cost of doing business in Alabama, thereby resulting in a calculation of taxable income that includes income fairly attributable to other states, add-back is unreasonable and thus not required for VFJ.
 

 “States have rightfully been concerned about taxpayers taking advantage of IMCO structures by setting up ‘shell’ or ‘sham’ corporations in low-tax jurisdictions such as Delaware or Nevada or several other states and shifting substantial portions of their income to low-tax jurisdictions without any real business activity taking place in those other states.
 
 See, e.g., Syms Corp. v. Commissioner of Revenue,
 
 765 N.E.2d 758 (Mass.2002). In response to taxpayers generating large deductions from these sham or shell corporations, several states passed statutes intended to deny taxpayers tax benefits from these sham corporations. Alabama’s add-back statute is one of these statutes.
 

 “Lee and Wrangler, however, are not sham or shell corporations. There were several business purposes for their creation and continued viability. They carry on substantial activities that are vital to the business operations of the VF group. VFJ had a business purpose for making the royalty payments — it needed the use of these valuable trademarks in its operations. The payments also had economic substance — they were made in cash and conferred on VFJ the right to use the trademarks.
 

 “Deductions for the cost of doing business are an essential part of any tax on net income. Recognizing this, Alabama has long allowed deductions for ‘the expenses of carrying on such business.’ Subdivision 5, § 454, Code of Alabama (1886). Alabama encourages such deductions for ordinary and necessary business expenses, ‘[t]he theory being,
 
 *966
 
 presumably, that the spending of money to make money should be encouraged to the end that taxes will be paid on the net accomplished.’
 
 Boswell v. Bonham,
 
 297 So.2d 379 (Ala.Civ.App.1974).
 

 “An expense is an ‘ordinary’ business expense when it is normal, common, and accepted under the circumstances by the business community.
 
 Welch v. Helvering,
 
 290 U.S. 111, 113-115 (1933). The testimony revealed that payment of royalties to IMCOs (both related and non-related) is normal, common, and accepted in the business community. An expense is a necessary business expense when it is ‘appropriate and helpful’ in developing the taxpayer’s business.
 
 Welch v. Helvering,
 
 290 U.S. [at] 113 ... (also noting that courts ‘should be slow to override [the taxpayer’s] judgment’ as to whether an expense is ‘necessary’). The royalty payments made by VFJ in 2001 were thus ordinary and necessary in its business, giving VFJ the right to manufacture jeanswear with the valuable Lee and Wrangler trademarks.
 

 “ ‘Unreasonable’ is not defined in the statute; it thus should be interpreted in accordance with the legislature’s intent in enacting the statute.
 
 State Dep’t of Revenue v. Amerada Hess Corp.,
 
 788 So.2d 179 (Ala.Civ.App.2000). Since the purposes of the add-back statute are to prevent abusive deductions and to ensure that income fairly attributable to Alabama is taxed in Alabama, it is unreasonable to require add-back when these purposes would be frustrated by add-back. Add-back is unreasonable in VFJ’s case because VFJ’s royalty payments are not
 
 abusive
 
 — they
 
 have economic substance and business purpose
 
 — and
 
 represent real and necessary costs of doing business in Alabama, and to disallow these deductions would distort the amount of VFJ’s income fairly attributable to this state.
 

 “Accordingly, considering the language and purpose of the add-back statute, Alabama public policy allowing deductions for business expenses in determining net income, and the particular facts of this case, I find that it would be ‘unreasonable’ to require add-back to VFJ’s royalty payments.”
 

 (Emphasis added.)
 

 After reviewing the legal conclusions in the trial court’s judgment, we agree with the Department’s characterization of the nature of the trial court’s determination with regard to the unreasonableness exception to the add-back statute. The trial court’s judgment sets forth a finding that VFJ’s income would be distorted by the application of the add-back statute. However, the language of the judgment indicates that the trial court interpreted the unreasonableness exception as being largely dependent on whether there is business purpose or economic substance to the royalty-payment transactions. Specifically, the judgment indicates that the trial court concluded that so long as a plausible business purpose for the royalty payments exists or the royalty deductions are not abusive, any refusal to allow the deduction for those royalty payments would result in a distortion of VFJ’s income attributable to Alabama.
 

 As further support for this conclusion, it should be noted that other than some very general testimony, VFJ presented no evidence tending to support a finding that the application of the add-back statute would distort its income attributable to Alabama. VFJ has asserted generally that disallowing the deduction for royalty payments to a related member distorts its income by not allowing it to deduct that expense as an ordinary and necessary cost of doing business in Alabama. As discussed later in this opinion, however, states may fashion their own income-tax formulas and are
 
 *967
 
 not required to grant all the deductions allowed by the federal taxing scheme. VFJ did not challenge the Department’s calculation of the amount of income to be added back under § 40-18-38(b), nor did it present any evidence tending to support a conclusion that the amount of tax resulting from the application of the add-back statute would result in its paying an amount of tax disproportionate to its presence and operations in Alabama. Thus, the trial court’s finding that the application to VFJ of the add-back statute would “distort the amount of VFJ’s income fairly attributable to this state” is based upon its interpretation of the general effect of the application of the add-back statute. We next address the arguments presented by the parties with regard to the unreasonableness exception of the add-back statute, which exception is set forth at § 40-18-35(b)(2), Ala.Code 1975.
 

 The Unreasonableness Exception
 

 The Department raises several arguments on appeal to support its contention that the trial court erred in interpreting the unreasonableness exception to Alabama’s add-back statute. It contends that the trial court’s interpretation of the unreasonableness exception found in § 40-18-35(b)(2) effectively nullifies another exception to the add-back statute, specifically the exception contained in subsection (b)(3). The Department also contends that the trial court’s interpretation of the unreasonableness exception renders the add-back statute itself ineffective by giving it no field of operation, or, phrased another way, that the trial court’s interpretation allows the exception to “swallow the add-back rule.”
 

 As mentioned earlier in this opinion, the unreasonableness exception to the add-back statute provides, in pertinent part, that the costs or expenses related to intangibles owned by related-member corporations are to be added back into the calculation of taxable income “unless the corporation establishes that the adjustments are unreasonable .... ” § 40-18-35(b)(2). The term “unreasonable” is not defined in the article governing income taxation contained in the Alabama Code. Our general rule of statutory interpretation is that the commonly accepted definition of a term should be used when the legislature enacts legislation that fails to define the term therein. Our supreme court has explained:
 

 “It is this Court’s responsibility to give effect to the legislative intent whenever that intent is manifested.
 
 State v. Union Tank Car Co.,
 
 281 Ala. 246, 248, 201 So.2d 402, 403 (1967). When interpreting a statute, this Court must read the statute as a whole because statutory language depends on context; we will presume that the Legislature knew the meaning of the words it used when it enacted the statute.
 
 Ex parte Jackson,
 
 614 So.2d 405, 406-07 (Ala.1993). Additionally, when a term is not defined in a statute, the commonly accepted definition of the term should be applied.
 
 Republic Steel Corp. v. Horn,
 
 268 Ala. 279, 281, 105 So.2d 446, 447 (1958). Furthermore, we must give the words in a statute their plain, ordinary, and commonly understood meaning, and where plain language is used we must interpret it to mean exactly what it says.
 
 Ex parte Shelby County Health Care Auth.,
 
 850 So.2d 332 (Ala.2002).”
 

 Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue,
 
 855 So.2d 513, 517 (Ala.2003).
 

 The term “unreasonable” has been defined as “[n]ot guided by reason; irrational or capricious,”
 
 see Black’s Law Dictionary
 
 1574 (8th ed.2004), and as “not governed by or acting according to reason” or “exceeding the bounds of reason or modera
 
 *968
 
 tion,”
 
 Merriam-Webster’s Collegiate Dictionary
 
 1371 (11th ed.2003).
 

 The add-back regulation has established guidelines for determining whether the “unreasonableness” exception applies. In essence, that regulation specifies that the application of the add-back statute will be deemed “unreasonable” when the tax resulting from the application of the statute has no “fair relation” to or is out of proportion to the corporation’s activities in Alabama.
 
 [6]
 
 The add-back regulation does not apply to this case because it was not in effect at the time this dispute arose. However, the fact that the add-back regulation does not apply does not mean that we should disregard the Department’s interpretation of the provisions of the add-back statute during the period between the enactment of the add-back statute and the adoption of the add-back regulation.
 

 The Department’s interpretation of the add-back statute is entitled to deference.
 
 See Farmer v. Hypo Holdings, Inc.,
 
 675 So.2d 387, 390 (Ala.1996) (“[A]n interpretation placed on a statute by an administrative agency charged with its enforcement will be given great weight and deference by a reviewing court.”). The deference to be afforded the Department’s interpretation of the add-back statute is based on the Department’s expertise in the area of taxation.
 
 Hamrick v. Alabama Alcoholic Beverage Control Bd.,
 
 628 So.2d 632, 633 (Ala.Civ.App.1993). “[W]hen the highest administrative officials charged with the duty of administering the tax laws have construed a tax statute, their construction should be given favorable consideration.”
 
 Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue,
 
 855 So.2d at 517.
 

 “[I]t is well established that in interpreting a statute, a court accepts an administrative interpretation of the statute by the agency charged with its administration, if that interpretation is reasonable.
 
 Ex parte State Dep’t of Revenue,
 
 [683 So.2d 980 (Ala.1996) ] (citing
 
 Alabama Metallurgical Corp. v. Alabama Pub. Serv. Comm’n,
 
 441 So.2d 565 (Ala.1983)). Absent a compelling reason not to do so, a court will give great weight to an agency’s interpretations of a statute and will consider them persuasive.
 
 Ex parte State Dep’t of Revenue,
 
 supra (citing
 
 Moody v. Ingram,
 
 361 So.2d 513 (Ala.1978)).”
 

 State v. Pettaway,
 
 794 So.2d 1153, 1157 (Ala.Civ.App.2001).
 

 The undisputed evidence presented by the Department indicates that the Department had previously interpreted the “unreasonableness” exception in the manner now set forth in the add-back regulation. Garrett’s testimony indicated that even before the adoption of the add-back regulation, the Department had consistently interpreted the unreasonableness exception as applying when the resulting tax would be “out of proportion” to the corporation’s presence in Alabama. He further testified that on many occasions before the adoption of the add-back regulation, the Department, in evaluating a taxpayer cor
 
 *969
 
 poration’s claim that the add-back statute was unreasonable under subsection (b)(2), had refused to consider whether the transactions paid to a related company had a legitimate business purpose or economic substance. Thus, the Department has consistently interpreted the unreasonableness exception as not being determined by business purpose or economic substance. Further, the foregoing demonstrates that the interpretation of the unreasonableness exception the Department implemented even before the adoption of the add-back regulation is consistent with the commonly accepted definition of the term “unreasonable,” i.e., exceeding reasonable limits or clearly excessive.
 
 See Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue,
 
 supra. The remainder of the Department’s arguments with regard to the unreasonableness exception strengthen the presumption in favor of its interpretation of that exception.
 

 The Department argues that to interpret the unreasonableness exception as based almost exclusively on a determination of whether transactions pertaining to intangibles between related companies have a business purpose or economic substance would provide the add-back statute with little, if any, field of operation other than to disallow sham deductions. The Department insists that the add-back statute was not enacted in order to address the problem of deductions based on sham transactions, i.e., those transactions that lack a legitimate business purpose or economic substance. The evidence presented at trial referenced on several occasions an example of a classic sham royalty-payment transaction. In that situation, a parent company creates a corporation to which royalty payments or licensing fees are paid. The sham corporation has no employees or business office; its sole function is to receive licensing fees or royalty payments from a related member. Because the sham corporation is located in a state in which that royalty income would not be subject to corporate income tax, the payments escape state taxation.
 

 The parties did not dispute that both before and after the enactment of the add-back statute, Alabama could, without resorting to the add-back statute, investigate and refuse to grant deductions such as those just described on the basis that payments made to sham corporations did not have a legitimate business purpose or economic substance. As indicated earlier, the starting point for determining a corporation’s taxable income in Alabama is the amount of federal taxable income. Under the Internal Revenue Code, a deduction is allowed for all “ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.” 26 U.S.C. § 162(a). Alabama can challenge a sham deduction as being not “ordinary and necessary” under 26 U.S.C. § 162.
 
 See
 
 § 40-18-38, Ala.Code 1975 (“In the case of a corporation ..., the term ‘taxable income’ means federal taxable income without the benefit of federal net operating losses plus the additions prescribed and less the deductions and adjustments allowed by this chapter and as allocated and apportioned to Alabama.”);
 
 see also Baisch v. Department of Revenue,
 
 316 Or. 203, 850 P.2d 1109 (1993). The parties do not dispute the Department’s power to contest sham transactions in this manner, and at trial, all the witnesses who were asked about this matter confirmed that Alabama has the power to challenge sham transactions without reference to the add-back statute.
 

 Given the foregoing, it seems unlikely that the legislature intended the add-back statute to address the problem of sham transactions, a problem that may be addressed in the absence of an add-back statute. It also seems unlikely that in enacting the add-back statute the Alabama
 
 *970
 
 Legislature was attempting to create a new method by which it could challenge sham transactions. Rather, the courts should assume that in enacting the add-back statute the legislature had in mind a different purpose and field of operation.
 

 “ ‘This court notes that a statute is presumed to have been enacted with a meaningful purpose.
 
 Adams v. Mathis,
 
 350 So.2d 381, 385-86 (Ala.1977). “The legislature will not be presumed to have done a futile thing in enacting a statute.”
 
 Ex parte Watley,
 
 708 So.2d 890, 892 (Ala.1997).’ ”
 

 Board of School Comm’rs of Mobile County v. Biggs,
 
 939 So.2d 942, 945 (Ala.Civ.App.2006) (quoting
 
 State v. Pettaway,
 
 794 So.2d at 1156).
 

 The title to Act No. 2001-1088, which, in part, created the add-back statute, indicates that the legislature intended, among other things, to “disallow deductions for certain payments for intangible property (patents and copyright) and interest expense to related entities” and “to waive certain interest and penalties ... and the add back of
 
 certain
 
 interest and intangible expenses.” That statement of legislative purpose does not mention any intent to address the issue of sham or fraudulent transactions or deductions.
 

 Rather, in enacting the add-back statute, the legislature evidenced its intent to eliminate, subject to certain exceptions, one type of deduction for ordinary and necessary business exceptions. A state, subject to constitutional limitations, may fashion its own taxing scheme. In doing so, a state is not required to use the same deductions the federal-taxation scheme allows. “[A] statutory tax deduction or exemption is a matter of legislative grace.”
 
 Ex parte State Dep’t of Revenue,
 
 441 So.2d 598, 601 (Ala.1983). In enacting the add-back statute, the Alabama Legislature elected not to extend its “grace” to deductions for transactions between related entities involving royalty payments for intangible assets. Under the general rules of statutory interpretation, which provide that a statute is presumed to have a meaningful purpose, we conclude that Alabama’s add-back statute was intended to have the purpose set forth by the legislature in Act No. 2001-1088. Such an interpretation affords the add-back statute both a meaningful purpose and a field of operation.
 

 Each of the exceptions to the add-back statute should also be interpreted as having a meaningful purpose and effect. ‘““There is a presumption that every word, sentence, or provision [of a statute] was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.” ’ ”
 
 Ex parte Uniroyal Tire Co.,
 
 779 So.2d 227, 236 (Ala.2000) (quoting
 
 Sheffield v. State,
 
 708 So.2d 899, 909 (Ala.Crim.App.1997)).
 

 Section 40-18-35(b)(3) provides an exception when the corporation can establish, first, that the payments to the related-member IMCO did not have as their primary purpose the avoidance of state taxation,
 
 and,
 
 second, that the related member to whom the payment was made was not engaged primarily in managing intangible assets. The § 40-18-35(b)(3) exception specifies that a transaction will be presumed not to have tax avoidance as its primary purpose if the transaction has a substantial business purpose or economic substance.
 
 See
 
 § 40-18-35(b)(3), Ala.Code 1975. However, in order for the existence of a business purpose or. economic substance to be relevant, there must also be a showing that the related entity to which the transaction is paid does not have the management of intangible assets as its primary business purpose. § 40-18-35(b)(3).
 

 In this case, VFJ did not seek an exception from the add-back statute under
 
 *971
 
 subsection (b)(3). Lee and Wrangler, the related members to whom VFJ made its royalty payments, are undisputedly engaged primarily in managing intangible assets, as specified in § 40-18-35(b)(3), so that subsection could not apply to the facts of this case. However, the trial court seems to have focused on the first part of the subsection (b)(3) exception in determining that the application of the add-back statute in this case was unreasonable because the royalty-payment transactions had a substantial business purpose or economic substance. Interpreting the unreasonableness exception of subsection (b)(2) in that manner, however, nullifies the effect of the subsection (b)(3) exception by eliminating the need for that exception. As the Department points out, the trial court’s interpretation “would ensure that the [unreasonableness exception in § 40-18-35(b)(2) would] apply in every case in which the (b)(3) exception might apply.” In other words, to construe the unreasonableness exception in subsection (b)(2) as requiring only a showing of a business purpose or economic substance would effectively render ineffective the exception set forth in § 40-18-35(b)(3), which requires a similar showing
 
 as well as
 
 a showing that the related company to whom the payment is made does not manage an intangible asset. We must presume that the legislature did not, in enacting subsection (b)(3), create a redundant exception to the add-back statute.
 
 Ex parte Uniroyal Tire Co.,
 
 supra (it must be presumed the legislature did not intend to enact a superfluous provision).
 

 The rules of statutory construction require that each statute or part thereof be given effect when possible.
 
 Ex parte Uniroyal Tire Co.,
 
 supra. Accordingly, in order for the unreasonableness exception to have its own effect or field of operation that is not duplicative of the subsection (b)(3) exception, the unreasonableness exception must be interpreted not to focus on a showing of business purpose or economic substance.
 

 The Department has interpreted the unreasonableness exception as being concerned with whether the add-back statute results in taxation that is out of proportion to the corporation’s activities in Alabama. That interpretation, which was later formalized in the add-back regulation, is consistent with the common-usage definitions of the term “unreasonable” as “irrational,” “capricious,” or “exceeding the bounds of reason or moderation.”
 
 Black’s Law Dictionary
 
 1574;
 
 Merriam-Webster’s Collegiate Dictionary
 
 1371. “Absent a compelling reason not to do so, a court will give1 great weight to an agency’s interpretations of a statute and will consider them persuasive.”
 
 State v. Pettaway,
 
 794 So.2d at 1157 (citing
 
 Ex parte State Dep’t of Revenue,
 
 683 So.2d 980 (Ala.1996), citing in turn
 
 Moody v. Ingram,
 
 361 So.2d 513 (Ala.1978)). VFJ has presented no “compelling reason” that leads this court to disagree with the arguments submitted by the Department or its interpretation of the unreasonableness exception to the add-back statute. Accordingly, we hold that the Department’s interpretation of the unreasonableness exception is appropriate and is the correct interpretation that should govern the disposition of this matter.
 

 The parties have disputed only the interpretation of the add-back statute. They did not present any evidence regarding whether the facts of this case justify the application of the subsection (b)(2) exception to the add-back statute. There is no specific evidence showing a possible distortion of VFJ’s income if the add-back statute is applied, and there is no evidence indicating that the amount of tax to which VFJ is subject under the add-back statute is out of proportion to VFJ’s activities in Alabama. In other words, the record does not demonstrate that the application of the
 
 *972
 
 add-back statute to VFJ for the tax year in question was unreasonable under the proper interpretation of the exception in subsection (b)(2) of the statute. Given the arguments and evidence presented, we must reverse that part of the trial court’s judgment that concluded that the application of the add-back statute to VFJ was unreasonable under § 40-18-35(b)(2).
 

 It is well settled that an appellate court may affirm a judgment if the judgment is correct for any reason, even one not argued.
 
 Tucker v. Nichols,
 
 431 So.2d 1263, 1264-65 (Ala.1983);
 
 see also Bay Lines, Inc. v. Stoughton Trailers, Inc.,
 
 838 So.2d 1013, 1017 (Ala.2002);
 
 Boykin v. Magnolia Bay, Inc.,
 
 570 So.2d 639, 642 (Ala.1990);
 
 Bennett v. Bennett,
 
 454 So.2d 535, 538 (Ala.1984); and
 
 Upchurch v. Universal Underwriters Ins. Co.,
 
 610 So.2d 1163, 1167 (Ala.Civ.App.1992). Accordingly, we next consider whether the trial court’s judgment in favor of VFJ may be affirmed on the basis of VFJ’s alternate claim that the exception found in § 40-18-35(b)(1), Ala.Code 1975, exempts it from the application of the add-back statute.
 
 See Steele v. Walser,
 
 880 So.2d 1123 (Ala.2003) (noting the rule that an appellate court may affirm a judgment based on an issue that is rejected by the trial court by considering an alternative argument asserted by the appellee).
 

 The Subject-to-Tax Exception
 

 VFJ argued at trial that the subject-to-tax exception found in subsection (b)(1) of the add-back statute precluded the Department from imposing its assessment. We reiterate the specific language of the subsection (b)(1) exception:
 

 “(1) For purposes of computing its taxable income, a corporation shall add back otherwise deductible interest expenses and costs and intangible expenses and costs directly or indirectly paid, accrued, or incurred to, or in connection directly or indirectly with one or more direct or indirect transactions, with one or more related members, except to the extent the corporation shows, upon request by the commissioner, that the corresponding item of income was in the same taxable year: a. Subject to a tax based on or measured by the related member’s net income in Alabama or any other state of the United States, or b. subject to a tax based on or measured by the related member’s net income by a foreign nation which has in force an income tax treaty with the United States, if the recipient was a ‘resident’ (as defined in the income tax treaty) of the foreign nation. For purposes of this section, ‘subject to a tax based on or measured by the related member’s net income’ means that the receipt of the payment by the recipient related member is reported and included in income for purposes of a tax on net income, and not offset or eliminated in a combined or consolidated return which includes the payor.”
 

 § 40-18-35(b)(l).
 

 VFJ filed a corporate income-tax return in North Carolina, a separate-reporting state, for the tax year in question. For reasons not fully explained in the record, Lee and Wrangler also filed corporate income-tax returns in North Carolina, although each IMCO filed that return “under protest.” Joseph McGraw, VF’s manager of state taxes, opined that Lee and Wrangler did not have a sufficient nexus with North Carolina to require those IMCOs to pay corporate income tax in that state. The testimony at trial showed that the IMCOs may have filed the returns in North Carolina in order to benefit VFJ and other VF subsidiaries. Pursuant to North Carolina’s add-back statute, VFJ and other VF subsidiaries with activity in North Carolina would not have to add back the royalty
 
 *973
 
 payments they made to the IMCOs if the IMCOs also filed corporate income-tax returns in North Carolina.
 
 See
 
 N.C. Gen. Stat. § 105-180.7A(c).
 

 In calculating taxable income in North Carolina, each IMCO listed its federal taxable income on its North Carolina corporate tax return. Lee reported federal taxable income of $73,021,142, and Wrangler reported $69,644,967 in federal taxable income. Each IMCO applied its apportionment factor to determine the amount of income attributable or apportionable to North Carolina. Therefore, neither IMCO paid North Carolina state income taxes on the full amount of its federal taxable income. For the 2001 tax year, Lee’s apportionment factor for North Carolina was 2.8783%, and Lee paid $143,480 in North Carolina corporate income tax. For the 2001 tax year, Wrangler’s apportionment factor for North Carolina was 3.9415%, and it paid $190,155 in corporate income tax in that state.
 

 With regard to the specific facts of this case, the subject-to-tax exception applies if Lee and Wrangler (the “related members” under the subject-to-tax exception) “reported and included” the royalty payments from VFJ (the taxpayer corporation) “for purposes of a tax on net income” in another state (in this case, North Carolina).
 
 See
 
 § 40-18-3500(1), Ala.Code 1975. The parties dispute the proper interpretation of the “reported and included” language of the subject-to-tax exception.
 

 VFJ argues that the subject-to-tax exception should be interpreted to mean that the entire amount of federal taxable income the IMCOs listed on their respective North Carolina corporate income-tax returns was “subject to tax,” even if only a small part of that was actually apportioned to North Carolina and taxed in that state. According to VFJ, the entire amount of federal taxable income for each of the IM-COs was both “reported” and “included,” as those terms are used in § 40-18-35(b)(1), on their respective North Carolina corporate income-tax returns. Thus, according to VFJ’s argument, all the IM-COs’ income was “subject to tax,” and the subsection (b)(1) exception applies and prohibits this state from adding back into the calculation of its taxable income any of the royalty payments it made to the IM-COs.
 

 The Department, on the other hand, argues that the subject-to-tax exception excludes from the application of Alabama’s add-back statute only that income the IMCOs apportioned to North Carolina. In other words, the Department argues that only 2.8783% of Lee’s income and 3.9415% of Wrangler’s income, the amounts those IMCOs apportioned to North Carolina, should be considered “subject to tax” in that state. According to the Department, the remainder of the IMCOs’ income, i.e., that income not apportioned to North Carolina, is not “reported and included” as that term is used in the subject-to-tax exception to Alabama’s add-back statute. Under the Department’s interpretation, even considering the subject-to-tax exception, the Department could add back the royalty payments to VFJ’s federal taxable income and apply the Alabama apportionment factor to that part of VFJ’s income that was not apportioned to North Carolina. In other words, the Department argues that the subject-to-tax exception should apply only on what is known as a “post-apportionment” basis, and VFJ contends that the subject-to-tax exception should be applied on a “pre-apportionment” basis.
 

 Professor Pomp’s testimony concerning the subject-to-tax exception supported the interpretation advanced by VFJ. Pomp testified that any income that is listed on an income-tax return should be subject to
 
 *974
 
 a tax, regardless of whether an apportionment factor would result in only a minimal taxation of the related member for a large amount of reported federal taxable income.
 

 Professor Enrich testified that a number of states that have add-back statutes do not have a subject-to-tax exception because an add-back statute itself requires only that income that can be properly apportioned to that state be included in calculating taxable income. In Enrich’s opinion, the logical reason for some states’ inclusion in their add-back statutes of a subject-to-tax exception is “really nothing more than an abundance of caution.” Enrich also stated that the Department’s interpretation achieves a reasonable result, given that the purpose of an add-back statute is to ensure that income is taxed in some state.
 
 [7]
 
 Further, Enrich pointed out that to interpret the subject-to-tax exception in the manner advocated by VFJ would render the add-back statute practically meaningless because it would be relatively simple for a corporation to find a way in which to pay a minimal amount of state tax in one state for the specific purpose of avoiding taxation in states with subject-to-tax exceptions in their add-back statutes.
 

 Richard Henninger, the director of individual and corporate income tax for the Department, testified that during the interim between the enactment of the add-back statute and the adoption of the add-back regulation, the Department had always applied the subject-to-tax exception on a post-apportionment basis. Joe Garrett, the administrator for tax policy for the Department, also testified that the Department had consistently applied the subject-to-tax exception on a post-apportionment basis.
 

 The add-back regulation, adopted after this dispute arose, interprets the definition of “subject to a tax” as referring to income that is “reported and included in
 
 post-allocation and apportionment income
 
 for purposes of a tax applied to the net income apportioned or allocated to the taxing jurisdiction.” Rule 810 — 3—35—-02(3)(f), Ala. Admin. Code (Department of Revenue). The evidence presented at trial indicates that, similar to the Department’s interpretation of the unreasonableness exception, the Department has consistently interpreted the subject-to-tax exception in the manner eventually adopted in the add-back regulation and that there was no change in the Department’s actions with regard to the subject-to-tax exception when the add-back regulation was ultimately adopted. Thus, since the enactment of the add-back statute, the Department’s interpretation of the subject-to-tax exception has been consistent. As stated earlier in this opinion, the interpretation of the add-back statute by the Department, the agency charged with the enforcement of the statute, is entitled to deference.
 
 Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue,
 
 supra;
 
 Farmer v. Hypo Holdings, Inc.,
 
 supra; and
 
 Hamrick v. Alabama Alcoholic Beverage Control Bd.,
 
 supra.
 

 
 *975
 
 The research conducted by the parties and by this court has failed to uncover any caselaw that has addressed the application of an exception similar to the one at issue here. Therefore, we must turn to the specific language of the subsection (b)(1) exception and apply the general rules of statutory construction in interpreting that exception.
 

 “The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute.”
 
 IMED Corp. v. Systems Eng’g Assocs. Corp.,
 
 602 So.2d 344, 346 (Ala.1992). Where possible, the legislature’s intent in enacting the statute should be discerned from the language of the statute.
 
 Perry v. City of Birmingham,
 
 906 So.2d 174, 176 (Ala.2005). Further,
 

 “ ‘ “[i]f the statute is ambiguous or uncertain, the court may consider conditions which might arise under the provisions of the statute and examine results that will flow from giving the language in question one particular meaning....”
 

 “ ‘In deciding between alternative meanings ..., we will not only consider the results that flow from assigning one meaning over another, but will also presume that the legislature intended a rational result, one that advances the legislative purpose in adopting the legislation, that is “workable and fair,” and that is consistent with related statutory provisions.’ ”
 

 Ex parte Berryhill,
 
 801 So.2d 7, 10 (Ala.2001) (quoting
 
 John Deere Co. v. Gamble,
 
 523 So.2d 95, 100 (Ala.1988)).
 

 The language of the subsection (b)(1) exception specifies that the add-back statute does not apply
 
 “to the extent the corporation shows ... that the corresponding item of income was ...
 
 [s]ubject to a tax based on or measured by the related member’s net income in Alabama or any other state of the United States.” § 40-18-35(b)(1) (emphasis added). The subject-to-tax exception goes on to define “subject to a tax based on or measured by the related member’s net income” as meaning “that the receipt of the payment by the recipient related member is
 
 reported and included in income for purposes of a tax on net income,
 
 and not offset or eliminated in a combined or consolidated return which includes the payor.”
 
 Id.
 
 (emphasis added).
 

 Thus, the legislature specified that for items of income to be “subject to ... tax,” they must be both “reported
 
 and
 
 included in income for purposes of a tax on net income.” § 40-18-35(b)(l) (emphasis added). Therefore, this court must assume that the legislature intended that the terms “reported” and “included” have different meanings. The courts must presume that in enacting the add-back statute, the legislature intended that each word of the statute have effect, and we must also presume that the legislature did not include meaningless language or redundancies in the statute.
 
 Ex parte Children’s Hosp. of Alabama,
 
 721 So.2d 184, 190-91 (Ala.1998);
 
 see also Board of School Comm’rs of Mobile County v. Biggs,
 
 supra. Accordingly, under the subsection (b)(1) exception to the add-back statute, the items of, income are to be reported by the corporation for which those payments constitute income, and that income must be “included in income for the purposes of a tax on net income.”
 

 We hold that for the purposes of the subject-to-tax exception, the term “included in income for the purposes of a tax on net income” means that the income at issue is actually taxed as a part of a tax on net income. Stated another way, we interpret the subject-to-tax exception set forth in subsection (b)(1) of Alabama’s add-back statute to apply on a post-apportionment, rather than on a pre-apportionment, basis.
 

 
 *976
 
 We believe that this holding is consistent with the intention of the legislature in enacting the add-back statute and that it advances the purpose of the legislature in enacting the add-back statute.
 
 See Ex parte Berryhill,
 
 supra;
 
 John Deere Co. v. Gamble,
 
 supra. As Professor Enrich pointed out in his testimony, interpreting the subject-to-tax exception to apply on a pre-apportionment basis would effectively negate the operation of the add-back statute. Under a pre-apportionment interpretation, a corporation could easily avoid the application of an add-back statute that contains a subject-to-tax exception by paying corporate income tax in a state in which its apportionment factor is relatively insignificant. This case is an example of that possibility. Although each IMCO reported significant federal taxable income, Lee had a state-tax burden in North Carolina of approximately .0019% of its federal taxable income, and Wrangler paid state tax of approximately .0027% of its federal taxable income.
 
 [8]
 
 Based on its argument that that modest level of taxation met the requirements of the subsection (b)(1) exception to Alabama’s add-back statute, VF J sought to avoid the application of that statute.
 

 An interpretation of the subject-to-tax exception that, in most cases, would result in a taxpayer’s ability to avoid the application of the add-back statute would be “unreasonable, and, consequently, [it cannot] be considered to be the intent of the legislature.”
 
 John Deere Co. v. Gamble,
 
 523 So.2d at 100. Such an interpretation would also serve to place Alabama back in the position it was in before the enactment of the add-back statute. “The legislature surely did not intend such a nonsensical result.”
 
 Ex parte State Dep’t of Revenue,
 
 441 So.2d at 604. We will presume that the legislature “ ‘intended a rational result.’ ”
 
 Ex parte Berryhill,
 
 801 So.2d at 10 (quoting
 
 John Deere Co. v. Gamble,
 
 523 So.2d at 100). Because we conclude that the trial court erred in its interpretation of the unreasonableness exception in entering a judgment in favor of YFJ, and because we cannot affirm the trial court’s judgment on the basis of the subject-to-tax exception, we reverse the trial court’s judgment.
 
 See Steele v. Walser,
 
 supra;
 
 see also Fidelity Nat’l Title Ins. Co. of Tennessee v. Jericho Mgmt., Inc.,
 
 722 So.2d 740,
 
 143-44
 
 (Ala.1998) (declining to affirm a trial court’s order based on other arguments asserted by the appel-lee);
 
 Mutual Assurance, Inc. v. Wilson,
 
 716 So.2d 1160, 1165 (Ala.1998) (same).
 

 Constitutionality
 

 This court has rejected the other bases VFJ has advanced in support of the trial court’s judgment in its favor. Therefore, because the case cannot “ ‘ “be settled on non-constitutional grounds,” ’ ”
 
 see Chism v. Jefferson County,
 
 954 So.2d 1058, 1063 (Ala.2006) (quoting
 
 Lowe v. Fulford,
 
 442 So.2d 29, 33 (Ala.1983)), we will consider VFJ’s constitutional challenges to the add-back statute.
 

 “ ‘ “In reviewing [a question regarding] the constitutionality of a statute, we ‘approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government.’ ”
 
 Moore v. Mobile Infirmary Ass’n,
 
 592 So.2d 156, 159 (Ala.1991) (quoting
 
 Alabama State Fed’n of Labor v. McAdory,
 
 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)). Moreover, “[w]here the validity of a statute is assailed and there are two possible interpretations, by one of which
 
 *977
 
 the statute would be unconstitutional and by the other would be valid, the courts should adopt the construction [that] would uphold it.”
 
 McAdory,
 
 246 Ala. at 10, 18 So.2d at 815. In
 
 McAdory,
 
 this Court further stated:
 

 “1 “[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is vio-lative of the fundamental law.”
 

 “ ‘246 Ala. at 9, 18 So.2d at 815 (citation omitted). We must afford the Legislature the highest degree of deference, and construe its acts as constitutional if their language so permits.
 
 Id’ ”
 

 Kirby v. State,
 
 899 So.2d 968, 972-73 (Ala.2004) (quoting
 
 Monroe v. Harco, Inc.,
 
 762 So.2d 828, 881 (Ala.2000)).
 

 In the trial court, VFJ alleged that the add-back statute violates both the Due Process Clause and the Commerce Clause of the United States Constitution. Although on appeal VFJ purports to challenge the statute only on the basis that it violates the Commerce Clause, we note that at least one part of its argument on the issue of constitutionality intertwines with concepts that are related to both the Commerce Clause and the Due Process Clause. The United States Supreme Court has stated:
 

 “Article I, § 8, cl. 3 [the Commerce Clause], of the Constitution expressly authorizes Congress to ‘regulate Commerce with foreign Nations, and among the several States.’ It says nothing about the protection of interstate commerce in the absence of any action by Congress. Nevertheless, as Justice Johnson suggested in his concurring opinion in
 
 Gibbons v. Ogden,
 
 9 Wheat. 1, 231-232, 239 (1824), the Commerce Clause is more than an affirmative grant of power; it has a negative sweep as well. The Clause, in Justice Stone’s phrasing, ‘by its own force’ prohibits certain state actions that interfere with interstate commerce.
 
 South Carolina State Highway Dept. v. Barnwell Brothers, Inc.,
 
 303 U.S. 177, 185 (1938).”
 

 Quill Corp. v. North Dakota,
 
 504 U.S. 298, 309, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). The “negative sweep” of the Commerce Clause referenced above, known as “the dormant Commerce Clause,” has been interpreted by the United States Supreme Court as prohibiting a state from imposing taxation on income that is not attributable to that state.
 
 Oklahoma Tax Comm’n v. Jefferson Lines, Inc.,
 
 514 U.S. 175, 179-80, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995);
 
 Quill Corp. v. North Dakota,
 
 supra.
 

 The United States Supreme Court has established precedent for determining the constitutionality of a state-imposed tax on entities or activities that involve interstate commerce. In
 
 Complete Auto Transit, Inc. v. Brady,
 
 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the State of Mississippi imposed a tax on motor vehicles manufactured outside that state. The Supreme Court upheld the tax. In doing so, the Court rejected its prior decisions that held that a state could not tax income from activities that were part of interstate commerce.
 
 See, e.g., Spector Motor Serv. v. O’Connor,
 
 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951), and
 
 Freeman v. Hewit,
 
 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265 (1946). Instead, the Court relied on other decisions that held that the Commerce Clause was not designed to relieve those engaged in interstate commerce from the burden of state taxation but was instead intended to allow a state to impose taxa
 
 *978
 
 tion only on the state’s fair share of the income derived from interstate activity.
 
 See, e.g., General Motors Corp. v. Washington,
 
 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964), and
 
 Western Live Stock v. Bureau of Revenue,
 
 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823 (1938). In reaching its holding, the Supreme Court adopted language from cases in which it
 

 “considered not the formal language of the tax statute but rather its practical effect, and ... sustained a tax against Commerce Clause challenge
 
 when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State”
 

 Complete Auto Transit, Inc. v. Brady,
 
 430 U.S. at 279, 97 S.Ct. 1076 (citing in a footnote
 
 General Motors Corp. v. Washington,
 
 supra;
 
 Northwestern Cement Co. v. Minnesota,
 
 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959);
 
 Memphis Gas Co. v. Stone,
 
 335 U.S. 80, 68 S.Ct. 1475, 92 L.Ed. 1832 (1948); and
 
 Wisconsin v. J.C. Penney Co.,
 
 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940)) (emphasis added). The foregoing four factors have become known as “the
 
 Complete Auto
 
 test” and are used to determine the validity of a tax on income derived from activity involving interstate commerce.
 

 Two of VFJ’s arguments regarding the constitutionality of Alabama’s add-back statute address the elements of the
 
 Complete Auto
 
 test. First, VFJ contends that “the add-back statute is effectively an attempt” to tax the income of Lee and Wrangler and that Alabama lacks a sufficient nexus with those IMCOs to justify the imposition of that tax.
 
 See Complete Auto,
 
 supra;
 
 see also Quill Corp. v. North Dakota,
 
 supra (discussing the requirement that a state have a “sufficient nexus” with a taxpayer in order for the taxpayer to be subject to taxation).
 

 The requirement of a sufficient nexus between the state and the taxpayer has been explained as follows:
 

 “The Due Process and Commerce Clauses of the Constitution do not allow a State to tax income arising out of interstate activities — even on a proportional basis — unless there is a ‘ “minimal connection” or “nexus” between the interstate activities and the taxing State, and “a rational relationship between the income attributed to the State and the intrastate values of the enterprise.”’
 
 Exxon Corporation v. Wisconsin Dept. of Revenue,
 
 [447 U.S. 207,] 219-220 [ (1980) ], quoting
 
 Mobil Oil Corp. v. Commissioner of Taxes,
 
 [445 U.S. 425], 436, 437 [ (1980) ].”
 

 Container Corp. of America v. Franchise Tax Bd.,
 
 463 U.S. at 165-66, 103 S.Ct. 2933.
 

 This court’s research has revealed some examples in which a state has attempted to tax income received by an IMCO from a corporation required to pay income tax in that state. In
 
 Comptroller of the Treasury v. SYL, Inc.,
 
 375 Md. 78, 106, 825 A.2d 399, 415 (2003), the Maryland Court of Appeals addressed two companion cases in which tax audits by Maryland’s comptroller of the treasury sought to require a Delaware IMCO to pay taxes on franchise fees paid to it by a related-member corporation with activities in Maryland. The tax court had held in each case that there was not a sufficient nexus between the IMCO and the State of Maryland to justify the imposition of the tax on the IMCO.
 
 SYL, Inc. v. Comptroller of the Treasury,
 
 (No. C-96-0154.01, April 26, 1999) (Md. Tax Ct.1999) (unpublished opinion);
 
 see also Comptroller of the Treasury v. SYL, Inc.,
 
 supra. In each case, the Circuit Court for Baltimore City affirmed the tax court’s reversal of
 
 *979
 
 the tax assessment, and the comptroller again appealed. The Maryland Court of Appeals reversed and upheld the tax assessments, concluding that “an appropriate portion” of each IMCO’s income was taxable in Maryland.
 
 Comptroller of the Treasury v. SYL, Inc.,
 
 supra. In reaching its holding, however, the Maryland Court of Appeals did not focus on the issue of nexus. Rather, the court based its decision on its determination that neither of the IMCOs at issue had any real economic substance and that the predominant reason for the creation of each IMCO was the avoidance of state taxation.
 
 Comptroller of the Treasury v. SYL, Inc.,
 
 375 Md. at 106-07, 825 A.2d at 415-16.
 

 In
 
 Geoffrey, Inc. v. South Carolina Tax Commission,
 
 313 S.C. 15, 437 S.E.2d 13 (1993), the South Carolina Tax Commission took the position that an IMCO was required to pay corporate income tax in that state on income it had received from royalty payments made by a related-member corporation with activities in South Carolina. The South Carolina Supreme Court held that the IMCO had a sufficient nexus with that state to justify the taxation at issue under both the Due Process Clause and the Commerce Clause of the United States Constitution.
 
 Id.
 

 In the cases discussed above, each state, pursuant to its interpretation of its taxation statutes, specifically sought to impose a tax directly on the out-of-state IMCOs rather than on the corporations that actually conducted activity within the state. Alabama’s add-back statute does not expressly impose a tax on Lee and Wrangler, nor has the Department sought to impose a tax directly on those IMCOs. VFJ contends, however, that the add-back statute does effectively impose a tax on the IM-COs. We conclude that the add-back statute does not implicitly (or “effectively”) impose a tax on the IMCOs. Rather, the add-back statute disallows a deduction sought by the taxpayer, VFJ, which does have activities in Alabama sufficient to justify its paying corporate income tax in this state. As stated earlier in this opinion, deductions are a matter of legislative grace.
 
 Ex parte State Dep’t of Revenue,
 
 441 So.2d at 598. We do not agree with VFJ that disallowing a deduction for an expense it pays constitutes a tax on the entities to whom it paid that expense, in this case Lee and Wrangler. Accordingly, we decline to affirm the trial court’s judgment on this basis.
 

 We next turn to VFJ’s argument that Alabama’s add-back statute results in a tax that is not fairly apportioned to Alabama and, therefore, that it fails to meet the third element of the
 
 Complete Auto
 
 test. In discussing this element, the Supreme Court has stated:
 

 “For over a decade now, we have assessed any threat of malapportionment by asking whether the tax is ‘internally consistent’ and, if so, whether it is ‘externally consistent’ as well. See
 
 Goldberg [v. Sweet,
 
 488 U.S. 252,] 261 [(1989)];
 
 Container Corp. [of America v. Franchise Tax Board
 
 ], ... 463 U.S. [159], at 169 [ (1983) ]. Internal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would not also bear. This test asks nothing about the degree of economic reality reflected by the tax, but simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate. A failure of internal consistency shows as a matter of law that a State is attempting to take more than its fair share of taxes from the interstate transaction, since allowing
 
 *980
 
 such a tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax. See
 
 Gwin, White & Prince[, Inc. v.
 
 Henneford,] 305 U.S. [434], at 439 [(1939)]....
 

 “External consistency, on the other hand, looks not to the logical consequences of cloning, but to the economic justification for the State’s claim upon the value taxed,
 
 to discover whether a State’s tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State.
 
 See
 
 Goldberg, supra,
 
 at 262;
 
 Container Corp., supra,
 
 at 169-170. Here, the threat of real multiple taxation (though not by literally identical statutes) may indicate a State’s impermissible overreaching.”
 

 Oklahoma Tax Comm’n v. Jefferson Lines, Inc.,
 
 514 U.S. at 185, 115 S.Ct. 1331 (emphasis added).
 

 In this case, VFJ has maintained that the add-back statute lacks external consistency, i.e., that it attempts to tax activity beyond that that is fairly attributable to its activity in Alabama.
 
 Oklahoma Tax Comm’n v. Jefferson Lines, Inc.,
 
 supra. In support of its argument, VFJ cites
 
 Hans Rees’ Sons, Inc. v. North Carolina,
 
 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879 (1931). In that case, the evidence indicated that between 17% and 21% of the taxpayer’s income was attributable to its activities in North Carolina. However, the statutory tax provision the taxpayer challenged had allocated approximately 80% of the taxpayer’s income to North Carolina for the purpose of imposing a tax on that income. The Supreme Court invalidated the tax, concluding that North Carolina had exceeded its authority in imposing the tax. In so holding, the Supreme Court determined that the evidence demonstrated that the tax “operated unreasonably and arbitrarily” as applied to the taxpayer and that it was “out of all appropriate proportion to the business transacted by the [taxpayer] in [North Carolina].”
 
 Hans Rees’ Sons, Inc. v. North Carolina,
 
 283 U.S. at 135, 51 S.Ct. 385.
 

 Another case to which VFJ refers this court addresses the issue of fair apportionment. In
 
 Hunt-Wesson, Inc. v. Franchise Tax Board of California,
 
 528 U.S. 458, 120 S.Ct. 1022, 145 L.Ed.2d 974 (2000), the taxpayer challenged as unconstitutional the State of California’s limitation of a deduction allowed under its tax code. Under the provision at issue in that case, California (a unitary or combined-reporting state) allowed a corporate taxpayer to deduct interest expenses to the extent that the interest expense exceeded other, unrelated income, e.g., income that did not arise out of the taxpayer’s activities in California. 528 U.S. at 461-62, 120 S.Ct. 1022. The Supreme Court concluded that, under the facts of that case, the limitation on the deductibility of interest expenses was not a true limit on a deduction but was instead more in the nature of an impermissible tax.
 

 The Supreme Court noted that had California demonstrated that the limitation “reflected the portion of the expense properly related to nonunitary income, the limit would not, in fact, be a tax on nonunitary income” but would instead be a “proper allocation of the deduction.” 528 U.S. at 465, 120 S.Ct. 1022. The Supreme Court held that the provision at issue was “not a reasonable allocation of expense deductions to the income that the expense generate[d],” and, therefore, it concluded that the provision violated the Due Process Clause and the Commerce Clause.
 
 Hunt-Wesson, Inc. v. Franchise Tax Bd. of California,
 
 528 U.S. at 468, 120 S.Ct. 1022. In reaching its holding, the Supreme Court, quoting
 
 Container Corporation of America v. Franchise Tax Board,
 
 463 U.S. at 165-66, 103 S.Ct. 2933, noted that a state may
 
 *981
 
 not impose a tax in the absence of a nexus between the state and the interstate activities or in the absence of a “rational relationship” between the income properly attributable to the state and the “intrastate values of the enterprise.”
 
 Hunt-Wesson, Inc. v. Franchise Tax Bd. of California,
 
 528 U.S. at 464, 120 S.Ct. 1022.
 

 We find the facts of this case to be distinguishable from those that would necessitate holdings similar to the holdings of
 
 Hans Rees’ Sons, Inc. v. North Carolina,
 
 supra, and
 
 Hunt-Wesson, Inc. v. Franchise Tax Board of California,
 
 supra. The Department, pursuant to the add-back statute, seeks to disallow the deduction of that part of the royalty payments VFJ made to Lee and Wrangler that is attributable to Alabama.
 
 [9]
 
 In other words, the Department seeks to apply VFJ’s Alabama apportionment factor to that part of the royalty payments that was not subject to taxation in North Carolina as part of the IMCOs’ taxable income in that state. Accordingly, we conclude that the Department’s interpretation of the add-back statute is consistent with the requirements of a nexus between Alabama and the interstate activities, i.e., the royalty payments.
 
 See Hunt-Wesson, Inc. v. Franchise Tax Bd. of California,
 
 supra;
 
 Container Corp. of America v. Franchise Tax Bd.,
 
 supra.
 

 Further, the evidence did not demonstrate that the application of the add-back statute has resulted in taxation that is out of proportion to VFJ’s activities in this state. The United States Supreme Court has established that it is the burden of VFJ, as the taxpayer, to establish “‘by “clear and cogent evidence” ’ ” that, as a result of the application of Alabama’s add-back statute, “ ‘the income attributed to [Alabama] is in fact “out of all appropriate proportions to the business transacted in [Alabama],” or has “led to a grossly distorted result.” ’ ”
 
 Container Corp. of America v. Franchise Tax Bd.,
 
 463 U.S. at 170, 103 S.Ct. 2933 (quoting
 
 Moorman Mfg. Co. v. Bair,
 
 437 U.S. 267, 274, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978)) (internal citations omitted). In this case, there has been no showing that the tax resulting from the application of Alabama’s add-back statute was out of proportion to VFJ’s activities in Alabama or that the resulting tax reached “beyond that portion of value that is fairly attributable to economic activity within the taxing State [ (i.e., Alabama) ].”
 
 Oklahoma Tax Comm’n v. Jefferson Lines, Inc.,
 
 514 U.S. at 185, 115 S.Ct. 1331;
 
 see also Container Corp. of America v. Franchise Tax Bd.,
 
 supra. Under the facts of this case, we conclude that there exists a rational relationship between the income the Department seeks to add back pursuant to § 40-18-35(b) and the income that is to be included in the determination of VFJ’s taxable income.
 
 See Hunt-Wesson, Inc. v. Franchise Tax Bd. of California,
 
 supra;
 
 Container Corp. of America v. Franchise Tax Bd.,
 
 supra. Accordingly, we hold that VFJ has not demonstrated that the add-back statute results in taxation of income that is not fairly attributable to Alabama.
 

 VFJ also asserts that the add-back statute impermissibly discriminates against interstate commerce. It is well settled that “ ‘[a] state may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State.’ ”
 
 Chemical Waste Mgmt., Inc. v. Hunt,
 
 504 U.S. 334,
 
 *982
 
 342, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992) (quoting
 
 Armco, Inc. v. Hardesty,
 
 467 U.S. 688, 642, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984)). VFJ contends that under the subject-to-tax exception the income-tax burden imposed by the add-back statute “depends upon where the recipient IMCO is located” and, therefore, that it results in differential treatment that rises to the level of unconstitutional discrimination.
 

 In support of its argument, VFJ cites only to authority discussing facially discriminatory statutes.
 
 See South Cent. Tel. Co. v. Alabama,
 
 526 U.S. 160, 119 S.Ct. 1180, 143 L.Ed.2d 258 (1999);
 
 Camps Newfound/Owatonna, Inc. v. Town of Harrison,
 
 520 U.S. 564, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997);
 
 Fulton Corp. v. Faulkner,
 
 516 U.S. 325, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996); and
 
 AT & T Corp. v. Surtees,
 
 953 So.2d 1240, 1245 (Ala.Civ.App.2006). In order to determine whether a statute is facially discriminatory, “the text of the statute must treat in-state economic interests differently from out-of-state economic interests in such a way as to benefit the in-state economic interests and burden the out-of-state economic interests.”
 
 AT & T Corp. v. Surtees,
 
 953 So.2d at 1245 (also setting forth examples of cases in which the United States Supreme Court found state statutes to be facially discriminatory).
 

 The subject-to-tax exception of Alabama’s add-back statute specifies that the exception applies when the related member’s income is taxed “in Alabama
 
 or any other state
 
 of the United States.” § 40-18-35(b)(1) (emphasis added). Thus, the subject-to-tax exception challenged by VFJ is implicated regardless of which state imposes a tax on the related member’s income. The language of the subject-to-tax exception clearly indicates that, -with regard to that exception, the application of Alabama’s add-back statute does not benefit in-state corporations to the detriment of, or disproportionately to, out-of-state corporations. Accordingly, we must conclude that the add-back statute does not, as VFJ contends, discriminate against interstate commerce on the ground that the subject-to-tax exception results in differential tax treatment between states.
 

 Alternatively, VFJ has asserted in its brief submitted to this court an argument concerning the foreign-jurisdiction portion of the subject-to-tax exception as it relates to the Commerce Clause.
 
 See
 
 § 40-18-36(b)(1), Ala.Code 1975. However, VFJ presented no evidence demonstrating that the facts of this case implicate that part of the subsection (b)(1) exception.
 

 “A party establishes standing to bring a challenge under the Commerce Clause when it demonstrates the existence of (1) an actual, concrete and particularized ‘injury in fact’ — ‘an invasion of a legally protected interest’; (2) a ‘causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be ‘redressed by a favorable decision.’
 
 Lujan v. Defenders of Wildlife,
 
 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A party must also demonstrate that ‘he is a proper party to invoke judicial resolution of the dispute and the exercise of the court’s remedial powers.’
 
 Warth [v. Seldin],
 
 422 U.S. [490] at 518, 95 S.Ct. 2197 [ (1975) ].”
 

 Alabama Alcoholic Beverage Control Bd. v. Henri-Duval Winery, L.L.C.,
 
 890 So.2d 70, 74 (Ala.2003). VFJ, because it has not shown that the foreign-jurisdiction portion of the subsection (b)(1) exception applies in this case, has failed to demonstrate sufficient injury so as to confer standing with regard to this argument.
 
 See Muhammad v. Ford,
 
 986 So.2d 1158, 1162 (Ala.2007) (in the absence of a legal injury, “there is no
 
 *983
 
 case or controversy for a court to consider”).
 

 In addressing the issue of the constitutionality of Alabama’s add-back statute, this court has addressed only those arguments VFJ has asserted in an effort to support the trial court’s judgment in its favor. We decline to address any other arguments that might have been made regarding the alleged unconstitutionality of Alabama’s add-back statute. As the Alabama Supreme Court has explained:
 

 “In passing on the validity of a statute it must be remembered that the legislature, except insofar as specifically limited by the state and federal constitutions, is all-powerful in dealing with matters of legislation; that a legislative act is presumed to be constitutional and valid, and all doubts are to be resolved in favor of its validity; that a statute, if reasonably possible, must be so construed as to sustain its validity and will not be declared invalid unless the court is clearly convinced that it cannot stand; that all questions of propriety, wisdom, necessity, utility and expediency in the enactment of laws are exclusively for the legislature, and are matters with which the courts have no concern.”
 

 Jansen v. State ex rel. Downing,
 
 273 Ala. 166, 168, 137 So.2d 47, 48 (1962).
 

 We reverse the trial court’s judgment in favor of VFJ, and we remand the case to the trial court for the entry of a judgment consistent with this opinion.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMAS and MOORE, JJ., concur.
 

 PITTMAN and BRYAN, JJ., concur in the result, without writings.
 

 [1]
 

 . VFJ named "Dwight Carlisle, in his official capacity as the commissioner of the Department of Revenue” as a defendant; it later substituted G. Thomas Surtees as a defendant in place of Carlisle when Surtees came to hold the office of commissioner of the Department of Revenue.
 
 See
 
 Rule 25(d), Ala. R. Civ. P.
 

 [2]
 

 . Section 40-18-1(18), Ala.Code 1975, defines the term "related member” as:
 

 "A person that, with respect to the taxpayer any time during the taxable year, is a related entity as defined in this section, a component member as defined in 26 U.S.C. § 1563(b) of a controlled group of which the taxpayer is also a component, or is a person to or from whom there is attribution of stock ownership in accordance with 26 U.S.C. § 1563(e).”
 

 [3]
 

 . In addition to Alabama, the following separate-reporting states also have add-back statutes: Arkansas,
 
 see
 
 Ark.Code Ann. § 26-51-
 
 *959
 
 423(g)(1); Connecticut,
 
 see
 
 Conn. Gen.Stat. § 12-218(c); District of Columbia,
 
 see
 
 D.C.Code § 47-1803.02; Georgia,
 
 see
 
 Ga. Code Ann. § 48-7-28.3; Illinois,
 
 see
 
 35 Ill. Comp. Stat. 5/203(a)(2); Indiana,
 
 see
 
 Ind. Code § 6-3-2-20; Kentucky,
 
 see
 
 Ky.Rev.Stat' Ann. § 141.205; Maryland,
 
 see
 
 Md.Code Ann., Tax-Gen. § 10-306.1; Massachusetts,
 
 see
 
 Mass. Gen. Laws ch. 63, § 311; Michigan,
 
 see
 
 Mich. Comp. Laws § 208.1201; Mississippi,
 
 see
 
 Miss.Code Ann. § 27-7-17; New Jersey,
 
 see
 
 N.J. Stat. Ann. § 54:10A-4.4; New York,
 
 see
 
 N.Y. Tax Law § 208; North Carolina,
 
 see
 
 N.C. Gen.Stat. § 105-130.7A; Ohio,
 
 see
 
 Ohio Rev.Code Ann. § 5733.042; South Carolina,
 
 see
 
 S.C.Code Ann. § 12-6-1130; Tennessee,
 
 see
 
 Tenn.Code Ann. § 67-4-2006(b); and Virginia,
 
 see
 
 Va.Code Ann. § 58.1-402(B).
 

 [4]
 

 . Garrett testified, in part:
 

 "[GARRETT:] Well, we — we told our people — our people meaning primarily our audit staff, people who reviewed returns— from early on, as soon as returns came in with the add-back issues on them, particularly with regard to the exceptions we're talking about here today, what our interpretation was.
 

 "THE COURT: Right.
 

 "[GARRETT:] .... And at least with respect to the unreasonableness exception, that business purpose, economic substance, arm’s length pricing was not enough.
 

 "THE COURT: Okay.
 

 "[GARRETT:] And so we didn't really— we didn't have to go backward and do anything differently after the reg came about.”
 

 [5]
 

 . We conclude that the trial court’s judgment is final. The trial court disposed of the case based on one of the exceptions to the add-back statute claimed by VFJ; accordingly, it was unnecessary for it to address the other claimed exception. The trial court was not required to address the constitutional challenges VFJ had asserted, because, once the
 
 *965
 
 trial court had ruled in favor of VFJ on another basis, it was not necessary to reach the constitutional issues. Our supreme court has explained:
 

 " ' "A court has a duty to avoid constitutional questions unless
 
 essential
 
 to the proper disposition of the case.” '
 
 Lowe v. Fulford,
 
 442 So.2d 29, 33 (Ala.1983) (quoting trial court’s order citing
 
 Doughty v. Tarwater,
 
 261 Ala. 263, 73 So.2d 540 (1954);
 
 Moses v. Tarwater,
 
 257 Ala. 361, 58 So.2d 757 (1952); and
 
 Lee v. Macon County Bd. of Educ.,
 
 231 F.Supp. 743 (M.D.Ala.1964)).
 

 ' "Generally courts are reluctant to reach constitutional questions, and should not do so, if the merits of the case can be settled on non-constitutional grounds.” ’
 
 Lowe,
 
 442 So.2d at 33 (quoting trial court’s order citing
 
 White v. U.S. Pipe & Foundry Co.,
 
 646 F.2d 203 (5th Cir.1981)). ' "No matter how much the parties may desire adjudication of important questions of constitutional law, broad considerations of the appropriate exercise of judicial power prevent[ ] such determinations unless actually compelled by the litigation before the court.” ’
 
 Lowe,
 
 442 So.2d at 33 (quoting trial court's order citing
 
 Troy State Univ. v. Dickey,
 
 402 F.2d 515 (5th Cir.1968)).”
 

 Chism v. Jefferson County,
 
 954 So.2d 1058, 1063 (Ala.2006).
 

 [6]
 

 . With regard to the unreasonableness exception to Alabama's add-back statute, the add-back regulation specifies:
 

 “(h) The [add-back statute] will be considered unreasonable if:
 

 "1. The taxpayer establishes that, based on the entirety of the taxpayer’s particular facts and circumstances, the adjustments have increased the taxpayer’s Alabama income tax liability to an
 

 amount that bears no fair relation to the taxpayer's Alabama presence, or
 

 “2. The taxpayer establishes that the interest or intangible expense was paid to a related member that passed through the interest or intangible payment via a corresponding interest or intangible expense payment to an unrelated third party....”
 

 Rule 810 — 3—35—.02(3)(h), Ala. Admin. Code (Department of Revenue).
 

 [7]
 

 . Professor Enrich explained:
 

 "The ambition of the add-back statute is to make sure that all of the income is subject to tax somewhere, that it’s all apportioned out and that each state is able to tax or not tax as it chooses the share that is attributed to it.
 

 "If the statute were read to say, well, if some one state to which some, perhaps quite small, portion of the income is attributable, if that state taxes it, then nobody else can — or we can’t attribute our fair share to us would be a nonsensical reading of the statute, whereas to say, well, to the extent that one state does tax some, we’ll just apportion the rest, is going to achieve the statutory purpose of making sure that all the income is attributed to some place that can choose whether to tax it or not.”
 

 [8]
 

 . Lee reported $73,021,142 in 2001 in federal taxable income, and it paid $143,480 for state taxes in North Carolina. Wrangler reported $69,644,967 in 2001 in federal taxable income, and it paid $190,155 for state taxes in North Carolina.
 

 [9]
 

 . With regard to the issue of fair apportionment, VFJ has challenged only the Department’s interpretation and application of the add-back statute. It has not argued that the add-back statute does not contain a provision requiring fair apportionment. We do not attempt to address that issue on its behalf.
 
 See, generally, Jansen v. State ex rel. Downing, 273
 
 Ala. 166, 168, 137 So.2d 47, 48 (1962) (quoted infra).