NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

TAX COURT OF NEW JERSEY



**Mala Sundar**
**PRESIDING JUDGE**

R.J. Hughes Justice Complex
P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 815-2922
Fax:      (609) 376-3018
taxcourttrenton2@judiciary.state.nj.us

September 13, 2023

Mitchell A. Newmark, Esq.
Eugene J. Gibilaro, Esq.
Blank Rome LLP

Joseph Palumbo, Esq.
Deputy Attorney General

Re:     Lorillard Tobacco Company v. Director, Division of Taxation
        Docket Nos. 008305-2007; 014043-2012

Dear Counsel:

This opinion decides the issue remanded by the Superior Court, Appellate Division, in the above captioned matters, which is whether N.J.A.C. 18:7-5.18(b)(3) effectuated in Schedule G-2 of the corporation business tax (CBT) return, violates the federal dormant Commerce Clause (DCC). The regulation, pre-2020 amendment, provided that a payor is entitled to a deduction for royalties paid to its related entity (i.e., an exception to the addback of deducted royalties) if the payor proves "the extent that the payee pays tax to New Jersey on the income stream." Schedule G-2 computes the deduction by comparing the payor and payee's New Jersey allocation factor and payment of CBT by the payee: if the payee's allocation factor is lower than the payor's factor, thus, pays lesser CBT on the royalties received, then the payor is allowed a partial deduction. Plaintiff argues that the regulation and Schedule G-2 operate to provide an unconstitutional geographic limitation.

In 2020, the regulation was amended to, among others, delete the phrase "showing the extent that the payee pays tax to New Jersey on the income stream." Plaintiff argues that (1) the amendment does not apply to the tax years at issue; and (2) regardless, the amended regulation is unconstitutional since Schedule G-2 remains unchanged. Defendant agrees with plaintiff that the amendments do not apply to the tax years at issue, but counters that the pre-2020 regulation and Schedule G-2 are constitutional.

For the reasons explained below, the court finds that the pre-2020 regulation is not discriminatory. However, it violates the external consistency part of the fair apportionment prong of the DCC due to its geographic limitation which prevents consideration of whether tax was paid or payable on the same income in other jurisdictions, when computing the allowable deduction in New Jersey to the payor. The deletion of the geographic limitation in 2020 and inclusion of illustrative instances operate as the most sensible interpretation of the addback statute and cures the constitutional concern. Therefore, the 2020 version of the regulation can apply to the tax years at issue here. Consequently, the court dismisses the complaints.

**BACKGROUND**

The detailed facts are set forth in the prior reported decisions. See Lorillard Tobacco Co. v. Dir., Div. of Taxation, 31 N.J. Tax 153 (Tax 2019), rev'd and remanded, 33 N.J. Tax 43 (App. Div. 2021). Briefly, plaintiff, Lorillard Tobacco Company (LTC), claimed a 100% exception to the addback of (i.e., 100% deduction for) New Jersey allocated royalties it paid to its wholly owned subsidiary, Lorillard Licensing Co., LLC (Licensing), for tax years 2002-2005; and 2007-2010. Defendant, Director, Division of Taxation (Taxation), granted LTC a partial exception since Licensing's New Jersey allocation factor was lower than LTC's New Jersey allocation factor, thus,

Licensing's CBT payment on the royalties received from LTC was lesser than LTC's CBT due as a result of the royalty addback.

This court agreed with LTC that not permitting a full deduction when Licensing had filed returns and paid CBT on its allocable portion of New Jersey income, was an unreasonable exercise of Taxation's discretion. Due to this ruling on the merits, the court did not address LTC's constitutional arguments. Both parties appealed this court's decision. The Appellate Division reversed and held:

> There is nothing unreasonable about allowing an exception to the add back to the extent the related party paid taxes in New Jersey to avoid possible double taxation. [Taxation's] regulation defines one means by which the add back is unreasonable, e.g., to the extent the related entity paid New Jersey taxes. [Taxation] granted [LTC's] refund request, corresponding to [Licensing's] CBT payments, by using a comparison of the allocation factors between the [two] . . . . The tax on [LTC's] add back that was not excepted as unreasonable was related to its activity in New Jersey based on its allocation factor.
>
> The purpose of the [Business Tax Reform Act] BTRA . . . was to close a loophole on tax avoidance. There was nothing unreasonable about [Taxation's] decision to grant the exception "only to the extent of the New Jersey taxes paid by" [Licensing]. This was a balanced approach. It considered the need to achieve the intent of the BTRA to close loopholes and the need by the filer to avoid an unreasonable add back. [LTC] is not precluded from showing that it is unreasonable in some manner not to refund the balance of the remaining add back based on facts special to its situation.
>
> The Tax Court appeared to shift the burden from [LTC] to [Taxation]. The statutes give the taxpayer the burden of establishing an exception to the disallowance of deductions: "adjustments . . . shall not apply if . . . the taxpayer establishes by clear and convincing evidence, as determined by the director, that the adjustments are unreasonable. . . ." N.J.S.A. 54:10A-4.4(c)(1)(b). If further adjustment was needed, [LTC] was not precluded from requesting this.
> "
> [33 N.J. Tax at 58.]

Although LTC cross-appealed that the regulation and Schedule G-2 are unconstitutional because they (1) are discriminatory; (2) indirectly tax Licensing's out-of-state activities; and (3) result in gross distortion of LTC's New Jersey allocable income, the Appellate Division held that the constitutional "issues require consideration" by the Tax Court "in the first instance" as "its familiarity with the tax issues in this context will be helpful." Id. at 59. The court noted that due to "the amendment of N.J.A.C. 18:7-5.18 in the interim, we also are unable to determine on this record if the constitutional issues are now moot." Ibid.

Parties submitted briefs on the remanded issue, after which the court heard oral arguments. At the court's direction, parties provided supplemental briefs on the application of an out-of-state case, Surtees v. VJF, Inc., 8 So.3d 959 (Ala. Ct. of Civ. App. 2008), since the plaintiff therein had attacked Alabama's royalty addback statute as unconstitutional on similar grounds as plaintiff's attack herein of New Jersey's addback regulation, N.J.A.C. 18:7-5.18(b)(3).[1]

Thereafter, the court requested the parties to attempt a resolution based on the 2020 amendments to N.J.A.C. 18:7-5.18(b)(3) since the Appellate Division observed that the same could moot LTC's constitutional arguments. The parties advised that the attempted resolution was unsuccessful, therefore, the court could issue its decision.

Thereafter, the parties also briefed the court's question whether the 2020 amendments to N.J.A.C. 18:7-5.18(b)(3) were retroactive. Both parties agreed that they were not.

---

[1] The only factual difference in Surtees is that the payor did not addback the royalties paid. Surtees, 8 So.3d at 960. The legal difference is that the payor attacked the constitutionality of Alabama's addback statute, which included a subject-to-tax-elsewhere exception, in addition to the unreasonableness exception to the addback. See Ala. Code §40-18-35(b)(1); (b)(2). Whereas here, LTC attacks the constitutionality of Taxation's methodology of construing the unreasonableness exception.

**THE CHALLENGED REGULATION**

N.J.S.A. 54:10A-4.4(b) requires an entity doing business in New Jersey, to addback "otherwise deductible" royalties paid to a related member in computing its allocable entire net income (ENI).[2] If the payor "establishes by clear and convincing evidence, as determined by" Taxation that the addback is "unreasonable," then the addback "shall not apply." N.J.S.A. 54:10A-4.4(c)(1)(b). Taxation interpreted this exception by providing that a "deduction shall be permitted . . . [i]f the taxpayer establishes that the adjustments are unreasonable by showing the extent that the payee pays tax to New Jersey on the income stream." N.J.A.C. 18:7-5.18(b)(3) (pre-2020). The intent was to avoid (1) double taxation "since the payee paid tax to New Jersey on the same income stream," and (2) income distortion. 35 N.J.R. 1573(a) (April 2003); 35 N.J.R. 4310(a) (Sep. 2003). This was the only option to prove an exception under the unreasonableness exception.

Part II, Exception 2 of Schedule G-2 to the CBT return provided for the computation of the deductible amount: the CBT on the allocated royalties paid (using the payor's New Jersey allocation percentage) is compared to the CBT on the payee's New Jersey allocated income (lower of the royalty received or its ENI). If the CBT on the affiliate payee's allocated income is greater than the CBT on the allocated royalty payments by the payor, then the payor can deduct 100% of the royalty payments. Else, the payor is allowed a partial deduction.

---

[2] An entity's ENI is the amount federally reported (often called "Line 28" income), with New Jersey "additions and subtractions." Int'l Bus. Machines Corp. v. Dir., Div. of Taxation, 26 N.J. Tax 102, 108-09 (Tax 2011). The federal Line 28 income is a net amount, i.e., gross income less business expenses such as royalties. Under the BTRA, the royalty-paid deduction is added back after reporting the Line 28 income. The "adjusted" ENI is then offset by net operating losses and further reduced by certain exclusions. This final amount, which is reported on Line 1 of the CBT return, is then allocated to New Jersey based on an allocation factor and taxed at the CBT rate. In an extremely simple example, if the Line 28, thus the ENI, is $100, which is net of $10 royalty deduction, the $10 is added back, thus, the ENI subject to allocation is $110.

In 2020 (after this court had decided the matter, and during its appeal), Taxation promulgated a "special amendment" to N.J.A.C. 18:7-5.18(b). The amendments were enacted to "comply with the statutory amendments . . . and . . . case law." 52 N.J.R. 1991(a) (Nov. 2020). The statutory amendments were for tax years after 2018 and as to cases involving foreign tax treaties. The "case law" amendments were "to add five scenarios, outside of an agreement in writing between the Director and the taxpayer, for claiming that a disallowance of an interest deduction would be unreasonable under the exception as set forth at N.J.S.A. 54:10A-4(k)(2)(I)." 52 N.J.R. 1991(a). "The five situations are: 1) unfair duplicative taxation; 2) a technical failure to qualify the transactions under the statutory exceptions; 3) an inability or impediment to meet the requirements due to legal or financial constraints; 4) an unconstitutional result; and 5) the transaction's equivalency to an unrelated loan transaction." Ibid. These instances were also incorporated into the royalty addback regulation at issue here. Thus, N.J.A.C. 18:7-5.18(b) and (b)(3) now read as follows (deletions [], additions italicized):

> (b) Interest expenses and costs [and] *as well as*, intangible expenses and costs directly or indirectly paid, accrued, or incurred in connection with a transaction with one or more related members shall not be deducted in calculating entire net income, except that a deduction [shall] *may* be permitted:
> . . .
> (3) If the taxpayer establishes, *to the satisfaction of the Director*, that the adjustments are unreasonable by [showing the extent that the payee pays tax to New Jersey on the income stream; or] *clear and convincing evidence, and any one of the following circumstances applies:*
> *i. Unfair duplicate taxation;*
> *ii. A technical failure to qualify the transactions under the statutory exceptions;*
> *iii. An inability or impediment to meet the requirements due to legal or financial constraints;*
> *iv. An unconstitutional result; or*
> *v. The transaction is equivalent to an unrelated loan transaction;*

The instances (i) through (v) were adopted from a case addressing the unreasonableness exception to the addback of interest paid to related members, where the court stated:

> in enacting N.J.S.A. 54:10A-4(k)(2)(I) the Legislature intended that something more than a valid non-tax business purpose and economic substance must be demonstrated to qualify for the unreasonable exception: unfair duplicative taxation; a technical failure to qualify the transactions under the statutory exceptions; an inability or impediment to meet the requirements due to legal or financial constraints; an unconstitutional result; a demonstration that the transaction for all intents and purposes is an unrelated loan transaction.
>
> [Morgan Stanley & Co. Inc. v. Dir., Div. of Taxation, 28 N.J. Tax 197, 200 (Tax 2014).][3]

Taxation however did not change Part II, Exception 2 of Schedule G-2 which continues to tie-in, thus, limit, the payor's deduction to the CBT paid by the payee on the royalty addback amount.[4]

The instructions for the Schedule G-2 provide as follows:

> Any other exceptions can not be made on the return. The amounts paid to related members as reported on line (a) of Schedule G . . . Part II, must be included in the amount reported on line (c) of Schedule G . . . Part II. A separate Refund Claim (Form A-3730) stipulating all the facts and providing all applicable evidence to support the taxpayer's claim, must be submitted in order to request any other exception.

---

[3] The court noted that "[t]his list is by no means intended to be exhaustive." Morgan Stanley, 28 N.J. Tax at 220, n.13. The interest addback was also enacted by the BTRA, and like for royalty payments, provided an unreasonableness exception to the addback. N.J.S.A. 54:10A-4(k)(2)(I). Taxation's pre-2020 regulations treated the interest addback and royalty addback alike as to unreasonableness exception, viz., proof of "the extent the related party pays tax in New Jersey on the income stream." N.J.A.C. 18:7-5.18(a)(2) (interest); 18:7-5.18(b)(3) (royalties). Unlike the royalty addback, the interest addback has a separate exception if the recipient member is subject to, and pays income tax elsewhere, on the interest received. N.J.S.A. 54:10A-4(k)(2)(I)(i)-(iii).

[4] Schedule G-2 was amended twice: one applies to taxable years ending on or after July 31, 2007, and one applies to taxable years beginning after January 1, 2018. The 2018 change was due to a change in law as to foreign treaties (L. 2018, c. 48). In both versions, there was no change to the method of computing the amount excepted from the addback of royalties paid to a related member.

**ARGUMENTS PRESENTED**

LTC does not attack the addback statute as unconstitutional because, it notes, although the statute denies a 100% deduction for royalties paid to a related member, it also allows a deduction under the unreasonableness exception without any limitations other than a delegation to Taxation for a discretionary determination in this regard. What is problematic, per LTC, is Taxation's regulation conditioning or limiting the unreasonableness exception to the CBT paid by the payee, which in turn is dependent on the payee's New Jersey allocation factor. The more the payee allocates income to New Jersey, the higher is the payor's deduction and vice-versa, thus, per LTC, entities with affiliates in New Jersey that do not allocate income to other states are treated better. Further, LTC argues, Taxation's methodology of matching allocation factors and tacking the difference on to LTC's income is an unconstitutional indirect tax on Licensing's extra-territorial income and a grossly disproportionate taxing of LTC's activities in New Jersey.

Taxation counters thus: the BTRA adds back only what was deducted from <u>LTC's</u> income. In other words, a portion of <u>LTC</u>'s income is reduced by the royalties paid to Licensing, therefore, when the same is added back, the deducted amount retains the same character -- a portion of LTC's income. The addback is <u>of</u> LTC's New Jersey allocated royalty payment, thus, <u>to</u> LTC's allocated New Jersey income, which means there is no tax on extra-territorial income of Licensing, nor disproportionate taxing of LTC, which then means there is no constitutional violation. Ruling otherwise, Taxation argues, would eviscerate the Appellate Division's holding that N.J.A.C. 18:7-5.18(b)(3) is a reasonable interpretation of the legislative intent underlying the BTRA, viz., preventing artificial reduction of New Jersey source income by it shifting it to a lower-allocation factor related entity.

Taxation's argument appears to be this: if LTC's allocated royalty addback is $10, LTC owes $0.90 CBT (at 9%). The $10 deduction was from LTC's income therefore, the $10 royalty-paid addback is also LTC's income. It is irrelevant if the $0.90 tax is recovered at LTC's level or Licensing's level, but if Licensing pays $0.25 based on its allocation factor, then LTC owes the remaining $0.65 (as translated into the nondeductible amount). This is the meaning of the phrase "to the extent that the payee pays tax to New Jersey on the income stream" in the regulation.

**ANALYSIS**

<u>Constitutionality of N.J.A.C. 18:7-5.18(b)(3) (pre-2020)</u>

The standard of review on a constitutional issue is de novo because it is solely a legal question. Thus, the court need not defer to Taxation's interpretation. <u>Abbott v. Burke</u>, 100 N.J. 269, 298-99 (1985) ("although an agency may base its decision on constitutional considerations, such legal determinations do not receive even a presumption of correctness on . . . review).

Regulations interpreting statutes are presumptively valid. <u>T.H. v. Div. of Developmental Disabilities</u>, 189 N.J. 478, 490 (2007). Conversely, a regulation which "offend[s] the State or Federal Constitution" cannot be sustained. <u>Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dept. of Envtl. Prot.</u>, 191 N.J. 38, 48 (2007).

Under the DCC, "state regulations may not discriminate against interstate commerce" and a state "may not impose undue burdens on interstate commerce." <u>South Dakota v. Wayfair, Inc.</u>, 138 S. Ct. 2080, 2091 (2018). The prohibited discrimination includes "state taxes" that are facially discriminatory, i.e., those which "explicitly put greater burdens on out-of-state businesses or provide more favorable terms to in-state businesses," or those that "disparately impact[] interstate commerce." <u>Whirlpool Properties, Inc. v. Dir., Div. of Taxation</u>, 208 N.J. 141, 166 (2011).

A state also cannot tax income not allocable to it. Id. at 152 ("Fundamental constitutional principles limit a state's ability to tax out-of-state entities," thus "a state simply cannot tax" income "earned outside its borders") (citation and internal quotation marks omitted). Doing so violates the DCC. Armco Inc. v. Hardesty, 467 U.S. 638, 644 (1984) ("A tax that unfairly apportions income from other States is a form of discrimination against interstate commerce."); Surtees, 8 So.3d at 977 (the DCC "has been interpreted . . . as prohibiting a state from imposing taxation on income that is not attributable to that state").

This concern is allayed by using an allocation or "a formula apportionment method" where an entity's income is allocated "between the taxing jurisdiction and the rest of the world on the basis of a formula taking into account objective measures of the corporation's activities within and without the jurisdiction." Whirlpool, 208 N.J. at 152 (citation and internal quotation marks omitted).[5] "The test [that] will sustain a state tax using a formula apportionment method [is] (1) when the tax is applied to an activity with a substantial nexus with the taxing State, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the State." Id. at 163 (citation, internal quotation marks and parentheticals omitted).

LTC's attack appears to be focused on the DCC's prongs of (i) discrimination; and (ii) the external consistency part of the "fair apportionment" prong of the DCC which requires the tax at

---

[5] In New Jersey, the allocation factor is determined under N.J.S.A. 54:10A-6 (allocation of ENI is by "the property fraction, plus twice the sales fraction plus the payroll fraction and the denominator of which is four" for tax years prior to 2012). Thus, the sales factor was double weighted or counted for the tax years at issue here.

issue be internally and externally consistent.[6]  External consistency looks "to the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State." Okla. Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 185 (1995).

*Discrimination*

The court finds no facial discrimination, i.e., where domestic entities are treated more favorably than foreign entities, in Taxation's application of the unreasonableness exception of the addback statute under N.J.A.C. 18:7-5.18(b)(3).  All entities with related member transactions are included in the royalty addback statute and to the unreasonable exception therein.  If a New Jersey domiciled entity pays royalty to its related member the addback applies.  If a foreign entity pays royalty to its related member, the addback applies.  If the related member payee pays CBT to New Jersey on the allocated royalty deduction (income in the payee's hands), or on a portion of it, then the payor is entitled to the addback exception accordingly, regardless of whether the payor or payee

---

[6] Nexus is not an issue since LTC and Licensing filed CBT returns.  Internal consistency is a "hypothetical functioning of a tax formula" and analyzes the "tax at issue to see whether its identical application by every State . . . would place interstate commerce at a disadvantage as compared with commerce intrastate."  Whirlpool, 208 N.J. at 164-65 (citations and internal quotation marks omitted).  Here, the addback statute N.J.S.A. 54:10A-4.4(c)(1)(b), and the corresponding regulations, N.J.A.C. -5.2, and N.J.A.C 18:7-5.18, are internally consistent because they match income attributable to New Jersey with the related-entity deduction attributable to New Jersey so that if every state had a similar statute to New Jersey's than each state would only require in-state royalty income to be reported and only allow for in-state related party deductions.

The "fairly related" fourth prong "examines whether the taxpayer received benefits from the taxing state" which is not a "a proportionality requirement between the benefits provided and the tax paid . . . for general revenue taxes like net income taxes."  Whirlpool, 208 N.J. at 167.  Here, this is not an issue because, and based on its CBT returns, LTC did business in New Jersey, thus, benefitted from the State's customers, labor market, government services (fire, police).  See Amerada Hess Corp. v. Dir., Div. of Taxation, 490 U.S. 66, 79 (1989) ("There is also no doubt that New Jersey's [CBT] . . . is fairly related to the benefits that New Jersey provides . . . which include police and fire protection, the benefit of a trained work force, and the advantages of a civilized society") (citation and internal quotations omitted).

is a domestic or foreign entity. In other words, a full or partial deduction will be allowed regardless of the payor or payee's corporate domicile so long as the payee is a related entity. No New Jersey domiciled related-member payee which allocates income within and outside New Jersey is given a special preference or competitive advantage over similar foreign entity in application of a partial addback under the regulation.

Disparate impact on interstate commerce is generally implicated when a State law or regulation has a negative bearing on the free flow of commerce, i.e., where State's statute or regulation has the purpose or effect of barring or limiting a foreign entity from freely engaging in nation-wide commerce. See e.g., Park Pet Shop v. City of Chicago, 872 F.3d 495, 501 (7th Cir. 2017) (a facially neutral law can practically have a discriminatory effect, and if it bears so heavily on interstate commerce that it acts as an "embargo on interstate commerce without hindering intrastate sales," it is treated as if it were facially discriminatory).

LTC argues that the negative impact is that Licensing may be forced to lessen its business presence or activities in other (possibly tax-friendly) taxing jurisdictions so as to match LTC's New Jersey allocation factor. Taxation argues that it cannot force Licensing to allocate more than constitutionally permitted, nor is it forcing LTC to allocate more to New Jersey.[7]

It is difficult to achieve a 100% match of a payor and payee's allocation factors. For instance, here, for the tax years at issue, the allocation factor was an average of the ratio of three business presence indicators in New Jersey: (a) property; (b) payroll; and (c) sales. LTC had

---

[7] The royalty recipient, if a foreign entity, is deemed to have an economic presence in, thus, nexus to the State and is required to file CBT returns. Lanco, Inc. v. Dir., Div. of Taxation, 188 N.J. 380 (2006). The BTRA did not repeal this requirement. See Springs Licensing Group, Inc. v. Dir., Div. of Taxation, 29 N.J. Tax 1 (Tax 2015).

property and payroll in New Jersey. Licensing did not. See Lorillard Licensing Co., LLC v. Dir., Div. of Taxation, 29 N.J. Tax 275, 278 (App. Div. 2015) (Licensing "had no physical presence or employees in any state outside of North Carolina."). Thus, using LTC's allocation factor would almost always never match Licensing's for purposes of the addback.

Each parties' arguments, while credible, only emphasize the point that what is being sought under N.J.A.C. 18:7-5.18(b)(3) and Part II of Schedule G-2 is not the unachievable perfect match of allocation factors of the LTC and Licensing. Rather, they are a means to determine the deductible amount of the added back royalty payments. Thus, the pre-2020 version of the regulation and the computational methodology do not state a cause of action of disparate impact under the DCC. See e.g., Whirlpool, 208 N.J. at 168 n.9 (While "[i]t may be that the state taxes extraterritorially . . . that is a fair apportionment argument.").[8]

*Fair Apportionment*

LTC's claim that N.J.A.C. 18:7-5.18(b)(3) and Schedule G-2 operate to indirectly tax Licensing, and/or tax LTC all out of proportion, is addressed by the Appellate Division's decision. See Lorillard, 33 N.J. Tax at 58 ("The tax on [LTC's] add back that was not excepted as unreasonable was related to its activity in New Jersey based on its allocation factor."). A payor's

---

[8] A more realistic match may be by comparing LTC's New Jersey gross sales ratio (less sales of services or non-licensed products) to Licensing's New Jersey gross sales ratio. Proof in this regard would be readily available since LTC must pay Licensing 13% royalty on LTC's monthly net sales and LTC must "provide" Licensing the "monthly and year-to-date net sales of the licensed tobacco products "broken down by brand." Lorillard, 31 N.J. Tax at 158. Since the BTRA deems the apportioned deducted royalties as LTC's apportioned New Jersey income, such a matching appears logical. While a possibly simplistic approach (since fair apportionment is never mathematically precise), which could provide the same result when using the methodology in Schedule G-2, this exercise may better endorse Taxation's position in computing a partial allowance for the royalty paid deduction under the BTRA. The suggested exercise is in keeping with Taxation's policy that the unreasonableness exception applies on a case-by-case basis.

New Jersey allocated royalty payment expense is deemed to be the payor's New Jersey source income for purposes of the addback statute in the first place. It follows that a partial addback continues to be deemed as only the payor's income. Any attempt to increase Licensing's allocation factor to match LTC's allocation factor, would, as Taxation correctly points out, violate the constitutional basis underlying apportionment principles. See also Surtees, 8 So.3d at 979 (rejecting an identical argument and holding that Alabama's "add-back statute disallows a deduction sought by the" payor "which does have activities in Alabama sufficient to justify its paying corporate income tax in this state."); Whirlpool, 208 N.J. at 168 n.9 (rejecting the argument of "extraterritorial taxation" and holding that "[m]ere inclusion of extraterritorial income in the tax base for apportionment is not tantamount to extraterritorial taxation.") (citation omitted). Therefore, Taxation's regulation and Schedule G-2 function constitutionally in this regard.

In this connection, LTC's heavy reliance on Hunt-Wesson, Inc. v. Franchise Tax Bd., 528 U.S. 458 (2000), is misplaced. There, California's interest expense deduction statute limited the amount to that which exceeded an entity's nonunitary business' interest/dividend income. Id. at 461. "The parties concede[d] that the relevant income here -- that which falls within the scope of the statutory phrase 'not allocable by formula' -- is income that . . . by itself bears no 'rational relationship' or 'nexus' to California." Id. at 464. The court ruled that therefore, although "California's statute does not directly impose a tax on nonunitary income . . . it simply denies the taxpayer use of a portion of a deduction from unitary income," it was an "impermissible tax." Ibid. Here, New Jersey can tax the royalty income received by the Licensing. Licensing is deemed to have economic presence, thus, nexus to New Jersey, when its intellectual property (patents, trade secrets, trademarks, and know-how) is employed in New Jersey by, and in, LTC's business activities. See Lanco, 188 N.J. at 383 (rejecting the concept that there is a "universal physical-

presence requirement for state taxation under the Commerce Clause," and affirming the lower court's decision that Taxation "constitutionally may apply the . . . [CBT] notwithstanding a taxpayer's lack of a physical presence in New Jersey."); Surtees, 8 So.3d at 981 (distinguishing Hunt Wesson on grounds the Alabama's Tax Department's application of the addback statute "is consistent with the requirements of a nexus between Alabama and the interstate activities, i.e., the royalty payments" and that there is "a rational relationship between the income the Department seeks to add back . . . and the income that is to be included in" determining the payor's "taxable income," plus the plaintiff had failed to prove a distortion of its income or that "the income attributed to" Alabama was "in fact out of all appropriate proportions to the business transacted" in that State). The royalties received by Licensing from LTC's New Jersey sales has nexus to this State, thereby rendering Hunt-Wesson inapplicable.

However, there is merit to LTC's argument that limiting proof of double taxation by only accounting for the CBT paid by Licensing to New Jersey is problematic. N.J.A.C. 18:7-5.18(b)(3) (pre-2020) provided only one situation of when a reasonableness exception applies, viz., proof of CBT paid by the royalty recipient to New Jersey. Due to the disparity of apportionment factors, Licensing may have reported the royalties received for sales allocable to New Jersey and paid tax on the same. Here, for instance, Licensing filed returns in North Carolina and Iowa (tax year 2002); North Carolina, Iowa, Oklahoma, and South Carolina (tax year 2003); North Carolina, Iowa, Oklahoma, South Carolina, Florida, and Massachusetts (tax year 2004). Lorillard Licensing Co., LLC, 29 N.J. Tax at 278. It had a royalty agreement with LTC "in every state." Id. at 283. Thus, Licensing's allocation factor may be greater in some other state, and if so, more of Licensing's royalty income could be taxed in that state or in other states, which can mean that LTC warrants a higher deduction. On its face, then, the pre-2020 N.J.A.C. 18:7-5.18(b)(3), did not

permit a payor the option to show that there was out-of-state(s) multiple taxation of the royalties received by Licensing from LTC from New Jersey-based sales. Thus, Taxation's arguments that how or whether Licensing it taxed elsewhere "is of no concern" to New Jersey, is not credible.

It is true that the Appellate Division has ruled that the pre-2020 version of N.J.A.C. 18:7-5.18(b)(3) "defines <u>one means</u> by which the add back is unreasonable, e.g., to the extent the related entity paid New Jersey taxes," and that LTC is "not precluded from showing that it is unreasonable <u>in some manner</u> not to refund the balance of the remaining add back <u>based on facts special to its situation</u>," thus, "[i]f further adjustment was needed, [LTC] was not precluded from requesting this." <u>Lorillard</u>, 33 N.J. Tax at 58 (emphasis added). Until this pronouncement, there was nothing to this effect in the plain language of the regulation or Schedule G-2, nor was the same inferable. While a payor could have obtained relief if it and Taxation agreed to the "application or use of an alternative method of apportionment," under N.J.A.C. 18:7-5.18(b)(4), that regulation's constitutionality is not at issue here.

In sum, denying LTC a deduction of the amount of royalties paid to Licensing without consideration of whether those same amounts were reported/taxed elsewhere violates the external consistency part of the fair apportionment prong of the DCC.

<u>Applicability of the 2020 Amendments to N.J.A.C. 18:7-5.18(b)(3)</u>

While this matter was on appeal, the geographic limitation was eliminated from N.J.A.C. 18:7-5.18(b)(3) by the 2020 amendments. Thus, the Appellate Division noted that due to "the amendment of N.J.A.C. 18:7-5.18 in the interim, we also are unable to determine on this record if the constitutional issues are now moot." <u>Lorillard</u>, 33 N.J. Tax at 59.

If the 2020 version of the regulation applies here, it would pass constitutional muster because LTC can prove unfair double/multiple taxation by showing taxes paid on Licensing's New

Jersey-based royalty income elsewhere. Such proof has always been the burden of the payor, therefore, continuance of the same is not new or unexpected. Ibid. (disapproving this court's conclusion which "appeared to shift the burden from" LTC to Taxation in violation of the implementing statute, "N.J.S.A. 54:10A-4.4(c)(1)(b)").

The parties' agreement as to a prospective application of the 2020 amendments does not bind the court. The issue is one of law, not facts. Similarly, that the amendments to N.J.A.C. 18:7-5.18(b)(3) are stated to be effective April 2020, does not, in and of itself, prevent retroactive application. See e.g., Richard's Auto City, Inc. v. Dir., Div. of Taxation, 12 N.J. Tax 619, 640 (Tax 1992) (agreeing with Taxation "that the effective date of the regulation is irrelevant because the regulation is merely [its] interpretation of the statutory provision at issue"). Therefore, the court can proceed to opine on the issue of retroactivity.

Here, the regulatory clarification (and expansion by way of illustrative instances) of the unreasonableness exception for purposes of the royalty addback, continues to be interpretive of the addback statute inasmuch as it continues to echo the original intent underlying the regulation (unfair duplicative taxation or unconstitutional result). Just as Morgan Stanley's decision on statutory construction can apply to the case before it without concerns of retroactivity, so too can Taxation's clarification (and expansion by way of illustrative instances).[9] See also Richard's Auto

---

[9] The tax year at issue in Morgan Stanley was year ending November 2003. Morgan Stanley, 28 N.J. Tax at 206. The case was decided in 2014. Note that after the decision was rendered, Taxation first amended the interest addback regulation in 2017. See 49 N.J.R. 52(b) (Jan. 2017) (amendment to "delete Example 5 and the clause, 'regardless of whether a tax was actually paid on the related method,' because they conflict with N.J.S.A. 54:10A-4(k)(2)(I) as interpreted . . . in the holding of" Morgan Stanley). Then in 2020, Taxation included the illustrative examples in Morgan Stanley in the interest addback and royalty addback regulations. It is therefore difficult to agree that the 2020 changes should be deemed to be prospective when that case dealt with tax year 2003, and the regulations changed twice because of that case -- first in 2017, and then in 2020.

City, 12 N.J. Tax at 641 (a regulation "is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case at hand."). This is especially where both the interest addback and the royalty addback statutes provide for an unreasonable exception; the regulations always interpreted the same in an identical manner, see N.J.A.C. 18:7-5.18(a)(2); N.J.A.C. 18:7-5.18(b)(3); and one of the instances of unreasonableness elucidated in Morgan Stanley and incorporated by Taxation into the royalty addback regulation was proof of an unconstitutional result. In other words, elimination of the geographic limitation in N.J.A.C. 18:7-5.18(b)(3) and incorporation of the illustrative examples retains the original regulatory intent of unfair duplicative taxation but avoids an unconstitutional result.

Additionally, "retroactive application may be necessary to make the statute workable or to give it the most sensible interpretation." Johnson v. Roselle EZ Quick, LLC, 226 N.J. 370, 388 (2016) (alteration in original omitted). Here, the most sensible interpretation of the unreasonableness exception in the royalty addback statute is to have it applied in a constitutional manner. Indeed, this should be a given since it is presumed that a statute or regulation is enacted "with existing constitutional law in mind" and with an intent that it "function[s] in a constitutional manner." State v. Profaci, 56 N.J. 346, 349 (1970). Indeed, here, LTC agrees that the addback statute which disallows 100% of the deduction is constitutional because it also allows for an exception to the addback, and also posits that "there may be ways that [Taxation] could apply the unreasonableness exception in a constitutional manner." By eliminating the geographic limitation, N.J.A.C. 18:7-5.18(b)(3) achieves this and furthers the underlying intent of the regulation, i.e., avoiding duplicative tax on the same income and income distortion.

Further, retroactivity is acceptable when a regulation is "ameliorative or curative." Seashore Ambulatory Surgery Ctr., Inc. v. N.J. Dep't of Health, 288 N.J. Super. 87, 97-98 (App.

Div. 1996) (citations and internal quotations marks omitted).  See also Schiavo v. John F. Kennedy Hosp., 258 N.J. Super. 380, 386 (App. Div. 1992) (retroactive application if permissible if it is "curative," that is, "designed to remedy a perceived imperfection in or misapplication of a statute.); Matter of Appeal by Progressive Cas. Ins. Co., 307 N.J. Super. 93, 101 (App. Div. 1997) (if a "regulation is ameliorative or curative" it "may be retroactively applied"); James v. N.J. Manufacturers Ins. Co., 216 N.J. 552, 564 (2014) ("an amendment is curative if it does not alter the act in any substantial way, but merely clarifies the legislative intent behind the previous act.") (citation, internal quotation marks, and alterations omitted).

The 2020 elimination of the geographic limitation cures the prior flaw in the regulation in that it avoids an unconstitutional misapplication of the statutory provision of the unreasonableness exception to the royalty addback.  See id. at 564 ("Generally, curative acts are made necessary by inadvertence or error in . . . administration" of a statute) (citation omitted); Johnson, 226 N.J. at 388 (a curative enactment will "remedy a perceived imperfection in or misapplication of a statute").

Under any of the above principles, the 2020 amendments can be retroactively applied, thus, to the tax years at issue here.  In other words, payment of CBT by Licensing continues to be a viable reason for providing a partial deduction, but now consideration of a situation where the New Jersey allocated royalties are taxed elsewhere will also factor into the claim for an unreasonableness exception.

LTC points out that the constitutional concerns remain because Part II of Schedule G-2, the only place where the deduction is computed for purposes of the addback, continues to limit the deduction to the amount of CBT paid by the payee.  It is true that the instructions to Schedule G-2 state that no other exceptions can "be made on the return."  However, they also provide an

opportunity to seek additional deductions, albeit as a separate refund claim (on a separate form). Thus, while administratively tedious, LTC is not deprived of seeking more outside of the Schedule G-2 computation. Of course, this also means that Part II of Schedule G-2 cannot be the be-all and end-all of the partially deductible amount. Rather, it is, and should be a starting point, with LTC having the opportunity to show more in terms of tax actually paid by Licensing in other jurisdictions on the royalties received from LTC on LTC's sales of tobacco products in New Jersey.

Finally, the equitable principle of manifest injustice does not apply to defeat application of the 2020 version of the regulation to LTC. See OFP, L.L.C. v. State, 395 N.J. Super. 571, 591 (App. Div. 2007) (even if there is no constitutional bar from applying a law retroactively, the court may decline to do so under its "equitable powers" if it "would constitute manifest injustice") (citation and internal quotation marks omitted). It is highly doubtful whether LTC would have altered its franchise agreement with Licensing based on the elimination of the geographic limitation (especially when the agreement applied in all fifty states). In other words, it is not as if LTC relied upon N.J.A.C. 18:7-5.18(b)(3) in contracting with Licensing and agreeing to pay royalties. Indeed, it cannot be so since the royalty addback statute denies 100% deduction to royalties paid by an entity to its related member. Further, the pre-2020 and the 2020 version of the regulation allowed/allows an opportunity for a deduction under other scenarios, and as held by the Appellate Division here. See N.J.A.C. 18:7-5.18(b)(4); N.J.S.A. 54:10A-4.4. Therefore, application of the 2020 version of N.J.A.C. 18:7-5.18(b)(3) will not be manifestly unjust to LTC.

**CONCLUSION**

For the foregoing reasons, the court finds that the pre-2020 version of N.J.A.C. 18:7-5.18(b)(3) is not discriminatory but violates the external consistency part of the fair apportionment prong of the DCC due to its geographic limitation as to proving double or multiple taxation of the

same income elsewhere. However, this constitutional concern is allayed under the 2020 amendments which, among others, eliminates the geographic limitation and includes instances of an unconstitutional result as an exception to the royalty addback. As the most sensible interpretation of the royalty addback statute and as a curative measure, the court finds the 2020 amendments are applicable to the tax years at issue here.

The court therefore dismisses the complaints. An Order in accordance with this opinion will be entered.